# EXHIBIT 1

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21031 Ventura Blvd Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
*Attorneys for Plaintiff, and all others similarly situated*

Electronically FILED by
Superior Court of California,
County of Los Angeles
5/02/2025 8:28 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Covarrubias, Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF LOS ANGELES**
**UNLIMITED JURISDICTION**

| | |
|---|---|
| MARY ANTOSSYAN, individually, and on behalf of others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> THE KROGER CO., <br><br> Defendant. | Case No. 25STCV12963 <br><br> **CLASS ACTION COMPLAINT** <br><br> (1) Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17500 *et seq*.) and <br> (2) Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq*.) <br><br> **Jury Trial Demanded** <br><br> (Amount to Exceed $35,000) |

CLASS ACTION COMPLAINT

Now comes the Plaintiff, MARY ANTOSSYAN ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, and for his class action Complaint against the Defendant, THE KROGER CO. ("Defendant"), Plaintiff alleges and states as follows:

## PRELIMINARY STATEMENTS

1. This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of Unfair Competition Law (Cal. Business & Professions Code §§ 17500 *et seq*., and Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq* resulting from the illegal actions of Defendant, in advertising and labeling its products as containing "no preservatives" when the products contain citric acid. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## JURISDICTION AND VENUE

2. This class action is brought pursuant to California Code of Civil Procedure § 382. All causes of action in the instant complaint arise under California statutes.

3. This court has personal jurisdiction over Defendant, because Defendant does business within the State of California and County of Los Angeles

4. Venue is proper in this Court because Defendant does business *inter alia* in the county of Los Angeles and a significant portion of the conduct giving rise to Plaintiff's Claims happened here.

## PARTIES

5. Plaintiff Mary Antossyan is an individual who was at all relevant times residing in Glendale, California.

6. Defendant is an Ohio Corporation headquartered in Cincinnati, Ohio.

7. At all times relevant hereto, Defendant was engaged in the manufacturing, marketing, and sale of snack bars.

## FACTS COMMON TO ALL COUNTS

8. Defendant manufactures, advertises, markets, sells, and distributes products throughout California and the United States under brand name Simple Truth.

9. During the Class Period Defendant labeled all varieties of its Simple Truth Brand Fruit & Grain Bars (the "Products") as containing "no preservatives" when they contain citric acid.

10. Citric acid acts as a preservative when added to food products, including the Products at issue. The FDA has listed citric acid as a preservative in its "Overview of Food Ingredients, Additives and Colors".[1]

11. The United Stated Food and Drug Administration ("FDA") defines the term chemical preservative as: "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. § 101.22.

12. In a warning letter sent to Chiquita Brands International, Inc. and Fresh Express, Inc., the FDA warned that certain products were misbranded under the Federal Food Drug and Cosmetics Act because they "contain the *chemical preservatives ascorbic acid and citric acid* but their labels fail to declare these *preservatives* with a description of their functions. 21 C.F.R. [§] 101.22" (emphasis added).[2]

13. The Agricultural Marketing Service of the United States Department of Agriculture ("USDA") has also recognized the use of citric acid as a preservative stating that "Citric acid has a wide variety of uses, some of which can provide preservative functions, primarily though lowering the pH of the food."[3]

---

[1] *Overview of Food Ingredients, Additives & Colors,* FOOD AND DRUG ADMINISTRATION, *available at* https://web.archive.org/web/20220901032454/http://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors
[2] *See* **Exhibit A** attached hereto.
[3] *Citric Acid and Salts*, UNITED STATES DEPARTMENT OF AGRICULTURE, *available at* https://www.ams.usda.gov/sites/default/files/media/Citric%20Acid%20TR%202015.pdf.

14. The USDA's Food Safety Inspection Service's "Guideline for Label Approval" states that "[s]ome common chemical preservatives include BHA, BHT, calcium propionate, citric acid, natamycin and sodium propionate."[4]

15. On or about February 4, 2025, Plaintiff purchased one of the Products from a Ralph's located in Los Angeles county, California.

16. When purchasing the Products Plaintiff made her purchasing decision because of the labeling on the Product that read "no preservatives".

17. Persons, like Plaintiff herein, have an interest in purchasing products that do not contain false and misleading claims.

18. The following photos include examples of the Products' packaging including the relevant labeling:



19. Plaintiff has been deprived of her legally-protected interest to obtain true and accurate information about the consumer products she buys as required by California Law.

20. As a result, Plaintiffs and the class members have been misled into purchasing Products that did not provide them with the benefit of the bargain they paid money for, namely that the Products would not contain preservatives.

21. Plaintiffs and the Class Members expected to receive the benefit of avoiding the negative potential effects of consuming preservatives, however they have been deprived of that benefit because the Products contain citric acid.

---

[4] FSIS Guideline for Label Approval, UNITED STATES DEPARTMENT OF AGRICULTURE, *available at* https://www.fsis.usda.gov/sites/default/files/media_file/documents/FSIS-GD-2023-0001.pdf

22. Alternatively, Plaintiffs would not have purchased the Products in lieu of other similar Products without Defendant's misleading "no preservatives" label.

23. Plaintiffs and the Class Members paid a price premium to receive premium products that did not contain preservatives, instead Plaintiffs received non-premium products containing preservatives.

24. Plaintiff did not understand that the Products contained preservatives when she purchased them.

25. Furthermore, due to Defendant's intentional, deceitful practice of labeling the Products as containing "no preservatives", Plaintiff could not have known that the Products contained preservatives.

26. By making false and misleading claims about the qualities of the Products, Defendant impaired Plaintiffs' ability to choose the type and quality of the Products they chose to buy.

27. Worse than the lost money, Plaintiffs and the class members have been deprived of their protected interest to choose the type and quality of the products they ingest.

28. Defendant, and not Plaintiff, the Class, or Sub-Class, knew or should have known that the Products included preservatives, and that Plaintiff, the Class, and Sub-Class members would not be able to tell the Products contained preservatives unless Defendant expressly told them, as required by law.

29. Plaintiffs regularly visit stores where the Products are sold and will likely be exposed to Defendant's "no preservatives" labeling in the future. However, unless Defendant is forced to correct the fraudulent labeling or remove the preservatives, Plaintiff will be unable to determine if Defendant's "no preservatives" label accurately reflects the true contents of the Products.

30. Plaintiffs believe that products without preservatives are superior in quality to products that contain preservatives, and desires to purchase Products that do not contain preservatives as Defendant advertised the Products to be.

31. Plaintiff may purchase the Products again in the future, and as a result they will be harmed if Defendant is not forced to correct the fraudulent labeling or remove the preservatives.

32. As a result of Defendants' acts and omissions outlined above, Plaintiff has suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

    a. Lost money;

  b. Wasting Plaintiff's time; and

  c. Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling.

## CLASS ALLEGATIONS

33. Plaintiff brings this action on behalf of herself and all others similarly situated, as members of the proposed class (the "Class"), defined as follows:

> All persons within the United States who purchased the Products within four years prior to the filing of the Complaint through to the date of class certification.

34. Plaintiff also brings this action on behalf of herself and all others similarly situated, as a member of the proposed California sub-class (the "Sub-Class"), defined as follows:

> All persons within California who purchased the Products within four years prior to the filing of the Complaint through to the date of class certification.

35. Defendant, their employees and agents are excluded from the Class and Sub-Class. Plaintiff does not know the number of members in the Class and Sub-Class, but believe the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

36. The Class and Sub-Class are so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of their members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Class and Sub-Class include thousands, if not millions of members. Plaintiff alleges that the class members may be ascertained by the records maintained by Defendant.

37. This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Class and Sub-Class are so numerous that joinder of their members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

38. There are questions of law and fact common to the Class and Sub-Class affecting the parties to be represented. The questions of law and fact common to the Class and Sub-Class predominate over questions which may affect individual class members and include, but are not necessarily limited to, the following:

      a.    Whether the Defendant intentionally, negligently, or recklessly disseminated false and misleading information by labeling the Products as containing "no preservatives" when the Products contain citric acid;

      b.    Whether the Class and Sub-Class members were informed that the Products contained citric acid;

      c.    Whether the Products contained citric acid;

      d.    Whether Plaintiff, the class, and sub-class members understood that citric acid are preservatives when they bought the Products;

      e.    Whether Defendant's conduct was unfair and deceptive;

      f.    Whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above;

      g.    Whether the inclusion of citric acid in the Products is a material fact;

      h.    Whether there should be a tolling of the statute of limitations; and

      i.    Whether the Class and Sub-Class are entitled to restitution, actual damages, punitive damages, and attorney fees and costs.

39. As a resident of the United States and the State of California who purchased the Products, Plaintiff is asserting claims that are typical of the Class and Sub-Class.

40. Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Class and Sub-Class.

41. Plaintiff will fairly and adequately protect the interests of the members of the Class and Sub-Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

42. A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class and Sub-Class members is impracticable. Even if every Class and Sub-Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each class member. Class treatment will also permit the adjudication of

relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

43. The prosecution of separate actions by individual members of the Class and Sub-Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests.

44. Defendants have acted or refused to act in respect generally applicable to the Class and Sub-Class thereby making appropriate final and injunctive relief with regard to the members of the Class and Sub-Class as a whole.

45. The size and definition of the Class and Sub-Class can be identified through records held by retailers carrying and reselling the Products, and by Defendant's own records.

### COUNT I
### VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING ACT
### (Cal. Bus. & Prof. Code §§ 17500 *et seq.*)
### On behalf of the Class and the Sub-Class

46. Plaintiff incorporates by reference each allegation set forth above in paragraphs 1 through 45.

47. Pursuant to California Business and Professions Code section 17500, *et seq.*, it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...or...to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

48. California Business and Professions Code section 17500, *et seq.*'s prohibition against false advertising extends to the use of false or misleading written statements.

49. Defendant misled consumers by making misrepresentations and untrue statements about the Class Products, namely, Defendant sold the Products with labeling claiming the Products contained "no preservatives" and made false representations to Plaintiff and other putative class members in order to solicit these transactions.

50. Specifically, Defendant claimed the Products "no preservatives" when the Products contained citric acid.

51. Defendant knew that their representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiff and other Class and Sub-Class Members.

52. As a direct and proximate result of Defendant's misleading and false advertising, Plaintiff and the other Class Members have suffered injury in fact and have lost money or property. Plaintiff reasonably relied upon Defendant's fraudulent statements regarding the Products, namely that they did not know the Products contained preservatives. In reasonable reliance on Defendant's omissions of material fact and false advertisements, Plaintiff and other Class and Sub-Class Members purchased the Products. In turn Plaintiff and other Class Members ended up with products that turned out to actually be different than advertised, and therefore Plaintiff and other Class Members have suffered injury in fact.

53. Plaintiff alleges that these false and misleading written representations made by Defendant constitute a "scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

54. Defendant advertised to Plaintiff and other putative class members, through written representations and omissions made by Defendant and its employees, that the Class Products contain "no preservatives"

55. Defendant knew that the Class Products did in fact contain citric acid.

56. Thus, Defendant knowingly sold Class Products to Plaintiff and other putative class members that contained citric acid and were not as advertised.

57. The misleading and false advertising described herein presents a continuing threat to Plaintiff and the Class and Sub-Class Members in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendant to cease their false advertising, as well as disgorgement and restitution to Plaintiff and all Class Members Defendant's revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

**COUNT II**
**VIOLATIONS OF UNFAIR BUSINESS PRACTICES ACT**
**(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**
**On behalf of the Class and Sub-Class**

58. Plaintiff incorporates by reference each allegation set forth above in paragraphs 1 through 45.

59. Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL. Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices. A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm. Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

**UNFAIR**

60. California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice." Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

61. In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

62. Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class. Plaintiff and members of the Class have suffered injury in fact due to Defendant's decision to sell them fraudulently labeled products (Class Products). Thus, Defendant's conduct has caused substantial injury to Plaintiff and the members of the Class and Sub-Class.

63. Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer. Such deception utilized by Defendant convinced Plaintiff and members of the Class that the Class Products contained "no preservatives" in order to induce them to spend money on said Class Products. In fact, knowing that Class Products, by their objective terms contained citric acid, unfairly profited from their sale, in that Defendant knew that the expected benefit that Plaintiff would receive from this feature is nonexistent, when this is typically never the case in situations involving consumer products. Thus, the injury suffered by Plaintiff and the members of the Class and Sub-Class is not outweighed by any countervailing benefits to consumers.

64. Finally, the injury suffered by Plaintiff and members of the Class and California Sub-Class is not an injury that these consumers could reasonably have avoided. After Defendant, fraudulently labeled the Class Products as containing "no preservatives" the Plaintiff, Class members, and Sub-Class Members suffered injury in fact due to Defendant's sale of Class Products to them. Defendant failed to take reasonable steps to inform Plaintiff and Class and Sub-Class members that the Class Products contained citric acid and are not as advertised as a result. As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiff and the Class members to purchase the products. Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these consumers could reasonably have avoided.

65. Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

**FRAUDULENT**

66. California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

67. The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

68. Here, not only were Plaintiff and the Class and Sub-Class members likely to be deceived, but these consumers were actually deceived by Defendant. Such deception is

evidenced by the fact that Plaintiff agreed to purchase Class Products at a price premium even though the Products contained citric acid. Plaintiff's reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

69. As explained above, Defendant deceived Plaintiff and other Class Members by labeling the Products containing "no preservatives" when in fact the Products contain citric acid.

70. Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

## UNLAWFUL

71. California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

72. As explained above, Defendant deceived Plaintiff and other Class Members by labeling the Products as containing "no preservatives" when in fact the Products contain citric acid.

73. Defendant used false advertising, marketing, and misrepresentations to induce Plaintiff and Class and Sub-Class Members to purchase the Class Products, in violation of California Business and Professions Code Section 17500, et seq.

74. Had Defendant not falsely advertised, marketed or misrepresented the Class Products, Plaintiff and Class Members would not have purchased the Class Products. Defendant's conduct therefore caused and continues to cause economic harm to Plaintiff and Class Members. These representations by Defendant are therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 *et seq*.

75. Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class and Sub-Class Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief. Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and Class and Sub-Class Members seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

**MISCELLANEOUS**

72. Plaintiff and Classes Members allege that they have fully complied with all contractual and other legal obligations and fully complied with all conditions precedent to bringing this action or all such obligations or conditions are excused.

**REQUEST FOR JURY TRIAL**

Plaintiff requests a trial by jury as to all claims so triable.

**PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and the Class and Sub-Class, requests the following relief:

(a) An order certifying the Class and Sub-Class and appointing Plaintiff as Representative of the Class and Sub-Class;

(b) An order certifying the undersigned counsel as Class and Sub-Class Counsel;

(c) An order requiring Defendant to engage in corrective advertising regarding the conduct discussed above;

(d) Actual damages suffered by Plaintiff and Class and Sub-Class Members as applicable or full restitution of all funds acquired from Plaintiff and Class and Sub-Class Members from the sale of misbranded Class Products during the relevant class period;

(e) Punitive damages, as allowable, in an amount determined by the Court or jury;

(f) Any and all statutory enhanced damages;

(g) All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

(h) Pre- and post-judgment interest; and

(i) All other relief, general or special, legal and equitable, to which Plaintiff

and Class and Sub-Class Members may be justly entitled as deemed by the Court.

Dated:  May 2, 2025          Respectfully submitted,

LAW OFFICES OF TODD M. FRIEDMAN, PC

By: _____
TODD M. FRIEDMAN, Esq.
Attorney for Plaintiff

# **EXHIBIT A**

1/23/2015                                    Warning Letters > Fresh Express Incorporated 10/6/10

## Archived Content

The content on this page is provided for reference purposes only. This content has not been altered or updated since it was archived.

Search Archive

Home Inspections, Compliance, Enforcement, and Criminal Investigations Compliance Actions and Activities Warning Letters

# Inspections, Compliance, Enforcement, and Criminal Investigations

## Fresh Express Incorporated 10/6/10


Department of Health and Human Services

Public Health Service
Food and Drug Administration
San Francisco District
1431 Harbor Bay Parkway
Alameda. CA 94502-7070
Telephone: 510/337-6700

**WARNING LETTER**

**Via UPS**

October 6, 2010

Fernando Aguirre, President and CEO
Chiquita Brands International, Inc. and Fresh Express, Incorporated
250 East Fifth Street
Cincinnati, OR 45202

Dear Mr. Aguirre:

Starting on May 21, 2010 and ending on June 10, 2010, the Food and Drug Administration (FDA) inspected your food manufacturing facility located at 900 E. Blanco Road, Salinas, California. During this inspection, FDA investigators collected labels for your products and reviewed their labeling at

http://www.chiquita.com[1]. Based on our review, we have concluded that your Chiquita brand "Pineapple Bites with Coconut" and "Pineapple Bites" products are misbranded in violation of the Federal Food, Drug, and Cosmetic Act (the Act) and the applicable regulations in Title 21, Code of Federal Regulations, Part 101 (21 CFR 101). You can find the Act and FDA regulations through links at FDA's Internet home page at http://www.fda.gov[2].

Specifically, your "Pineapple Bites with Coconut" product is misbranded within the meaning of Section 403(a) of the Act [21 U.S.C. § 343(a)] in that its statement of identity, "Pineapple Bites with Coconut", is false and misleading. The ingredient statement for this product states that it is made with coconut; however, our investigation determined that this product is made with a coconut flavor spray. The characterizing flavor of your Pineapple with Coconut product must be identified in accordance with 21 CFR 101.22(i)(1)(iii) (for example. "coconut flavor").

Your "Pineapple Bites" and "Pineapple Bites with Coconut" products are misbranded within the meaning of Section 403(r)(1)(A) of the Act [21 U.S.C. § 343(r)(1)(A)] because their labeling bears nutrient content claims but the products do not meet the requirements for the claims.

Specifically, their labeling includes the claim "Plus ... Antioxidants." However, this claim does not include the names of the nutrients that are the subject of the claim or, alternatively, link the term "antioxidants" by a symbol (e.g., an asterisk) that refers to the same symbol that appears elsewhere on the same panel of the product label, followed by the name or names of the nutrients with recognized antioxidant activity. 21 CFR 101.54(g)(4). Your use of this antioxidant claim therefore misbrands your products under section 403(r)(2)(A)(i) of the Act [21 U.S.C. § 343(r)(2)(A)(i)].

Your "Pineapple Bites" and "Pineapple Bites with Coconut" products also bear the claim "Plus Phytonutrients." "Phytonutrients" are not nutrients for which a recommended daily intake (RDI) or daily recommended value (DRV) has been established. Therefore, nutrient content claims regarding "phytonutrients" are not authorized and further misbrand your products under section 403(r)(2)(A)(i) of the Act [21 U.S.C. § 343(r)(2)(A)(i)]. To the extent phytonutrients are intended to be the basis for an antioxidant nutrient content claim, that use would violate FDA regulations for the same reason and because phytonutrients are not recognized as having antioxidant activity. 21 CFR 101.54(g)(1) and (2).

Both your "Pineapple Bites" and "Pineapple Bites with Coconut" products also bear the statement "Only 40 Calories." This statement implies that the products are "low calorie" foods. A "low calorie" claim may be made if a food with a reference amount customarily consumed (RACC) greater than 30 grams (g) or greater than 2 tablespoons does not provide more than 40 calories per RACC. 21 CFR 101.60(b)(2)(i)(A). The RACC established for pineapple is 140 g. See 21 CFR 101.12(b) (Table 2, Fruits and Fruit Juices, All other fruits fresh, canned, or frozen).

The nutrition information for both products states that there are 40 calories per 1 piece (80 g) of product; this equals about 70 calories per RACC. Therefore, under 21 CFR 101.13(i)(2), the products are required to carry a disclaimer adjacent to the claim, e.g., "Only 40 calories per serving, not a low calorie food". Because your products fail to bear the required disclaimer, they are misbranded within the meaning of section 403(r)(1)(A) of the Act.

The "Pineapple Bites" and "Pineapple Bites with Coconut" products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservatives ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22. Further, the ingredients ascorbic acid and citric acid must be declared by their common or usual names. 21 CFR 101.4(a).

This letter is not intended to be an all-inclusive review of your firm's products and processes. It is your responsibility to ensure that your firm and your products comply with the Act and FDA, regulations. You should take prompt action to correct the violations. Failure to promptly correct these violations may result in regulatory action without further notice. For instance, we may take further action to seize your product or enjoin your firm from operating.

We also note that, FDA (through its contractor) obtained two samples of Fresh Express Hearts of Romaine the testing of which yielded human pathogens. One sample was found to contain *Salmonella Anatum*; another sample was found to contain *E. coli 0157:H7*. We acknowledge that you issued letters to your customers in an effort to recall affected products. However, FDA recommends that you review your firm's criteria for receipt of raw product, your procedures for ensuring that wash, flume and processing water do not contaminate your products and any other conditions and practices that may relate to the cause of the contamination.

We further acknowledge your June 25, 2010 response to the Good Manufacturing Practices violations cited in the FDA Form 483 regarding this inspection. In your response, you committed to:

- Retrain employees to replace or sanitize their gloves after contacting unsanitized surfaces;

- Include the dryer hoist controls and the equipment control panels that involve direct employee contact in your daily wash and sanitation procedures;

- Create a new storage system for aprons, gloves, and sleeve guards for times during manufacturing when they are not in use; and

- Modify your cutting surface inspection and replacement program so that cutting surfaces will be changed after every **(b)(4)** of use.

However, you did not provide documentation to demonstrate that these corrections have been made. You also did not address the observation that your technician improperly read the free chlorine indicator tests in the flume water. Please provide this information and documentation in your response to this Warning Letter.

In addition to the labeling issues identified above, we note that the available labeling space is at least 6" in height; therefore, the size of the nutrition information declared on these packages is not appropriate and does not meet the formatting requirements under 21 CFR 101.9(d), including hairline and footnote requirements. We note that since some of the nutrients are at insignificant levels, a shortened version of the Nutrition Facts panel may be used, e.g., the statement "Not a significant source of dietary fiber", at the bottom of the table of nutrient values as allowed under 21 CFR 101.9(c).

Please notify this office in writing within fifteen (15) working days from the date you receive this letter of

1/23/2015     Warning Letters > Fresh Express Incorporated 10/6/10

the specific steps you have taken to correct the noted violations, including an explanation of how you plan to prevent these violations, or similar violations, from occurring again. Please include documentation of the corrective actions you have taken. If your planned corrections will occur over time, please include a timetable for implementation of those corrections. If corrective action cannot be completed within 15 working days, state the reason for the delay and the time within which the corrections will be completed.

Your response should be sent to:

Darlene B. Almogela
Director of Compliance
United States Food and Drug Administration
1431 Harbor Bay Parkway
Alameda, CA 94502

If you have any questions about the content of this letter please contact Sergio Chavez, Compliance Officer, at 510-337-6886.

/s/

Barbara Cassens
District Director


Page Last Updated: 10/08/2010
Note: If you need help accessing information in different file formats, see Instructions for Downloading Viewers and Players.

> Accessibility Contact FDA Careers FDA Basics FOIA No Fear Act Site Map Transparency Website Policies

U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA (1-888-463-6332)
Email FDA



For Government For Press

Combination Products Advisory Committees Science & Research Regulatory Information Safety Emergency Preparedness International Programs News & Events Training and Continuing Education Inspections/Compliance State & Local Officials Consumers Industry Health Professionals FDA Archive

 U.S. Department of **Health & Human Services**

## Links on this page:

1. http://www.chiquita.com/
2. http://www.fda.gov