Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
23586 Calabasas Rd., Suite 105
Calabasas, CA 91302
Phone: 323-306-4234
tfriedman@toddflaw.com
abacon@toddflaw.com
*Attorneys for Plaintiff, and all others similarly situated.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY ANTOSSYAN, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> THE KROGER CO., <br><br> Defendant. | ) Case No. 2:25-cv-05165-GW-MBK <br> ) <br> ) **PLAINTIFF'S OPPOSITION TO** <br> ) **DEFENDANT'S MOTION TO** <br> ) **DISMISS FIRST AMENDED** <br> ) **COMPLAINT** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## <u>PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>

1

# **TABLE OF CONTENTS**

I.    INTRODUCTION                                                    6

II.   STATEMENT OF FACTS                                             7

III.  LEGAL STANDARD                                                 8

IV.   ARGUMENT                                                       9

      A.  PLAINTIFF ADEQUATELY PLED THAT CITRIC
          ACID IS A PRESERVATIVE OR FUNCTIONS AS A
          PRESERVATIVE IN THE PRODUCTS                               9

      B.  PLAINTIFF ADEQUATELY ALLEGED RELIANCE
          ON DEFENDANT'S MISLEADING LABELING                        16

      C.  DEFENDANT'S ATTEMPT TO STRIKE PLAINTIFF'S
          NATIONWIDE CLASS CLAIMS IS PREMATURE                      18

      D.  PLAINTIFF HAS STANDING TO BRING CLAIMS
          FOR ALL PRODUCTS LISTED IN THE COMPLAINT                  20

      E.  PLAINTIFF'S REQUEST FOR PUNITIVE DAMAGES
          SHOULD NOT BE STRICKEN                                    24

V.    CONCLUSION                                                     25

# **TABLE OF AUTHORITIES**

**Cases**

*Allen v. Hyland's Inc.*, 300 F.R.D. 643 (C.D. Cal. 2014) ............................................................ 15

*Allen v. Wright*, 468 U.S. 737 (1984) ........................................................................... 14, 16

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................. 3, 4

*Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007) ...................................................... 3

Bell v. Publix Super Markets, Inc. ............................................................................ 9, 10

Branca v. Bai Brands, LLC,

   2019 WL 1082562 (S.D. Cal. Mar. 7, 2019) ........................................................... 7

*Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524 (C.D. Cal. 2011) ..................................... 15

*Bruton v. Gerber Products Company*, 961 F.Supp.2d 1062 (N.D.Cal.2013) ............................... 15

Cabrega v. Campbell Soup Co.,

   2019 WL 13215191 (E.D.N.Y. Nov. 18, 2019) ............................................................. 6

*Chen-Oster v. Goldman, Sachs & Co.*, 2012 U.S. Dist. LEXIS 12961 (S.D.N.Y. Jan. 19, 2012) 13

*Clerkin v. MyLife.com, Inc.*, 2011 U.S. Dist. LEXIS 96735 (N.D. Cal. Aug. 29, 2011) .............. 12

*Connelly v. Hilton Grand Vacations Co.*, 2012 U.S. Dist. LEXIS 81332 (S.D. Cal. June 11,

   2012) ................................................................................................ 13

*Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2011 U.S. Dist. LEXIS 147489  (N.D. Cal.

   Dec. 22, 2011) ......................................................................................... 13

*Everest & Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir.1994) .......... 3

*Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91 (1978) ................................................ 14

*Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468 (C.D. Cal. 2012) ................................................ 15

*Hibbs-Rines v. Seagate Techs., LLC*, 2009 U.S. Dist. LEXIS 19283 (N.D. Cal. Mar. 2, 2009) .. 12

*I.B. v. Facebook, Inc.*, 2012 U.S. Dist. LEXIS 154327 (N.D. Cal. Oct. 25, 2012) ..................... 12

Ivie v. Kraft Foods Global, Inc.,

   2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ................................................................ 7, 8

*Jones v. ConAgra Foods, Inc.*, 912 F.Supp.2d 889 (N.D. Cal. 2012) ........................................... 4

*Jones v. ConAgra Foods, Inc.*, 912 F.Supp.2d 889, 899 (N.D. Cal. 2012). .................................. 4

Kelly v. Beliv LLC,

    640 F. Supp. 3d 286 (S.D.N.Y. 2022)........................................................................................ 6

Kubilius v. Barilla Am., Inc.,

    2019 WL 2861886 (N.D. Ill. July 2, 2019)............................................................................... 6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................................. 14

*Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1235-36 (S.D. Cal. 2009).................................... 12

*Medrazo v. Honda of North Hollywood,* 82 Cal.Rptr.3d 1 (2008) ............................................... 15

Morris v. Mott's LLP,

    2019 WL 948750 (C.D. Cal. Feb. 26, 2019)........................................................................ 7, 8

*N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).................................................. 3, 18

*Ortega v. Natural Balance, Inc.*, 300 F.R.D. 422 (C.D. Cal.2014) ............................................. 15

*Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) ............................. 3, 18

*Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal.App.4th 638, 645 (2008). ........................... 3

Quiroz v. Beaverton Foods, Inc.,

    2019 WL 1473088 (E.D.N.Y. Mar. 31, 2019) .......................................................................... 6

*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) ..................................... 15

*Rosado v. eBay Inc.*, Case No. 5:12–CV–04005–EJD, 2014 WL 2945774 (N.D. Cal. June 30, 2014) ........................................................................................................................................... 3

*Scott v. Pasadena*, 306 F.3d 646 (9th Cir. 2002) ....................................................................... 14

Silva v. Smucker Nat. Foods, Inc.,

    2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) .......................................................................... 7

Simeone v. T. Marzetti Co.,

    2023 WL 2665444 (S.D.N.Y. Mar. 28, 2023) ........................................................................... 6

Sims v. Campbell Soup Co.,

    2018 WL 7568640 (C.D. Cal. Sept. 24, 2018) ...................................................................... 7, 8

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014)...................................................... 16

*Valley Forge Christian College v. Americans United*, 454 U.S. 464 (1982) .............................. 14

*Von Koenig v. Snapple Beverage Corp.*, 713 F.Supp.2d 1066 (E.D. Cal. 2010)........................... 15

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) ............................................................ 12

*Warth v. Seldin*, 422 U.S. 490 (1975) ........................................................................................ 14

*Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008)........................................... 3

**Statutes**

Fed. R. Civ. P. 12(b)(6)………………………………………………………………..……………3

**Other Authorities**

7AA Wright, Miller & Kane, Federal Practice and Procedure § 1785.3………………………...12

7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1798 (3d ed. 2005)………………………………………………………………………….13

Plaintiff Mary Antossyan ("Plaintiff") respectfully submits this response in opposition to Defendant's, THE KROGER CO. Motion to Dismiss Plaintiff's First Amended Complaint, Dkt. 20.

## I.    INTRODUCTION

Defendant labels its fruit and grain bar products with objectively false claims that they contain "no preservatives" (the "Products"). In direct contradiction to the "no preservatives" label, the Products contain citric acid which is a chemical preservatives. *See* Plaintiff's First Amend. Compl., Dkt. 18, ("FAC") at ¶ 10. Plaintiff alleges reasonable consumers do not expect that products labeled as containing "no preservatives" contain preservatives. FAC ¶ 30-32. Plaintiff alleges that she, and the class members she seeks to represent, was misled by Defendant's "no preservatives" labeling in violation of the False Advertising Law ("FAL") (Cal. Business & Professions Code §§ 17500 *et seq*., Unfair Competition Law ("UCL") (Cal. Business & Professions Code §§ 17200 *et seq,* and Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750 *et seq.*).

Yet, Defendant seeks to dismissal of Plaintiff's claims on the basis that she has failed to state a claim upon which relief may be given. Specifically, Defendant argues that (1) the Product's labels are not deceptive, (2) Plaintiff did not plead her reliance on the Product's "no preservatives" labeling, (3) the Court should strike Plaintiff's nationwide class allegations,  (4) Plaintiff lacks standing to bring claims on behalf of consumers who purchased mislabeled Products she did not personally buy, and (5) the Court should strike Plaintiff's request for punitive damages.

Defendant is wrong. Plaintiff has plead adequate factual allegations to state a claim for relief under the FAL, UCL, and CLRA that is plausible on its face.  As Plaintiff explains below, Defendant's arguments necessarily raise disputes of fact, ignore Plaintiff's allegations in the FAC, and prematurely seek to strike Plaintiff's

allegations to disadvantage Plaintiff during the discovery phase.

## II.    FACTUAL BACKGROUND

This case is brought on behalf of purchasers of the Products in the United States between May 2, 2021, and the present. FAC ¶ 33. Plaintiff also brings a subclass of all persons who purchased the Products in California. *Id.* at ¶ 35. Plaintiff alleges that at least two products are mislabeled as having "no preservatives" because the products contain the citric acid. *Id.* at ¶ 10. The citric acid in the Products retards the deterioration of the Products. *Id* at ¶ 10-14. The FDA has stated that citric acid is a preservative when added to foods. *Id.* at ¶¶ 11-14. United States Department of Agriculture and numerous academic journals declare citric acid a food preservative. *Id.* at ¶¶ 10-14. Plaintiff alleges that she paid money to Defendant to receive Products without preservatives. *Id.* at ¶ 19-20. Plaintiff also alleges that she would not have purchased Defendant's Product in lieu of other similarly situated Products but for Defendant's mislabeling. *Id.* at ¶ 22-23. Plaintiff alleges that she expected to receive the benefit of avoiding the negative potential effects of consuming preservatives, but has been deprived of that benefit because Defendant's Products contain citric acid. *Id.* at ¶ 23. As such, Plaintiffs and class members lost money since they did not receive Products that are free from preservatives. *Id.* at ¶ 32.

Plaintiff alleges that Defendant's mislabeling affected similarly situated consumers who she seeks to represent. *Id.* at ¶ 33-35. Plaintiff alleges that Defendant's misrepresentations were uniform, and that the claims of Plaintiff and the class members did not arise of individualized circumstances or misrepresentations. *Id.* at ¶ 38. Plaintiff alleges that common issues predominate among the class members claims, and class treatment is superior to individual prosecution of the class members claims. *Id.* at ¶ 43-44.

7

## III.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). A court must draw all reasonable factual inferences in the plaintiff's favor. *Bell Atlantic*, 550 U.S. at 555–56. The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to plaintiffs. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). A complaint should not be dismissed unless a plaintiff could prove no set of facts in support of his claim that would entitle him to relief, and amendment would be futile. *Everest & Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir.1994).

To meet the pleading standard for fraud claims under the UCL, CLRA, FAL, and other consumer fraud statutes in the Ninth Circuit, a plaintiff must show that "members of the public are likely to be deceived." *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Specifically, a plaintiff must allege that purported misrepresentations: (1) were relied on by plaintiff; (2) were material; (3) influenced plaintiff's decision to purchase defendant's product; and (4) were likely to deceive members of the public. *Rosado v. eBay Inc.*, Case No. 5:12–CV–04005–EJD, 2014 WL 2945774 at *6 (N.D. Cal. June 30, 2014). The challenged conduct "is judged by the effect it would have on a reasonable consumer." *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal.App.4th 638, 645 (2008). "Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact that is not appropriate for resolution on the pleadings." *Williams*, 552 F.3d at 938–39. Only in the rare case where a court can conclude as a matter of law that alleged

misrepresentations are not likely to deceive a reasonable consumer, is it appropriate to dismiss claims under the UCL and FAL. *Jones v. ConAgra Foods, Inc.*, 912 F.Supp.2d 889, 899 (N.D. Cal. 2012).

## IV.    ARGUMENT

### A. PLAINTIFF ADEQUATELY ALLEGED THAT CITRIC ACID IS A PRESERVATIVE OR FUNCTIONS AS A PRESERVATIVE IN THE PRODUCTS

Plaintiff plausibly alleged factual content that allows the Court to draw the reasonable inference that Defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). As a threshold observation, function of an ingredient in a product is not determinative of the effects of an ingredient on consumers after they consume it. If a hypothetical product was labeled, "No Poisons", but actually contained strychnine, commonly known as rat poison, the "No Poisons" label would not be accurate simply because strychnine can be used as a stimulant. Even if the strychnine truly functioned as a stimulant in the hypothetical product, it would still be a poison, because it is categorically a poison. Similarly, consumers who seek products that do not contain poison, seek to avoid the consumption of poisons irrespective of what the poison's other functions might be. As noted above and further detailed below, Plaintiff alleges citric acid is a chemical preservative or functions as one in the Products. FAC at ¶¶ 10-14.

First, Defendant argued Plaintiff failed to show that citric acid functions as a preservative in the Products and her definition of preservative is implausible. Defendant's Mot. to Dismiss at p. 8-11. Those arguments do not align with a plain reading of the FDA's chemical preservative regulations, are scientifically inaccurate, and assert issues of fact regarding reasonable consumers' understanding of the term "no preservatives." The FDA defines chemical

preservative as: "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. § 101.22 (emphasis added). The term "tend" is defined in common parlance as to be likely to behave in a particular way or have a particular characteristic.[1] 21 C.F.R. § 101.22 does not define chemical preservatives based on the intended function of those chemicals, rather it defines chemical preservatives based on the likelihood that those chemicals will display characteristics that retard the deterioration of food. *See* 21 C.F.R. § 101.22. Therefore, Defendant's assertion that Plaintiffs must "establish" that the citric acid specifically functions as a preservative in the Products is incorrect.

Citric acid extends the shelf-life of the Products by creating an environment inhospitable to bacteria growth. FAC ¶ 10-14. Plaintiffs also included multiple sources referring to citric acid as a preservative in a variety of contexts. *Id*. The chemical structure of citric acid dictates that it has a bacterio-static effects on its environment, as a result citric acid is a chemical preservative in the Products because it tends to retard the deterioration of food. *Id.* Even if Defendant included citric acid for its flavor, citric acid still maintains the same chemical properties and effect on its environment. This is important because Plaintiff and the Class Members expected to receive the benefit of avoiding the negative potential effects of consuming preservatives. *Id.* ¶ 27. Plaintiff and the Class sought to avoid ingesting, or reduce their consumption of, chemicals that have preservative effects on the chemicals' environment such as consumer's bodies after they consume the

---

[1]Cambridge Dictionary, Definition of Tend, https://dictionary.cambridge.org/us/dictionary/english/tend

Products. See *id.* ¶ 33. Defendant's intended function for citric acid in the Products does not change the chemical properties of citric acid, or the effects of consuming citric acid. As a result, Plaintiff's understanding that preservatives are chemicals that have the capacity to prevent decay, decomposition, or spoilage is reasonable.

Beyond that, Plaintiff provided a source supporting her explicit allegation that citric acid is a preservative in fruit, fruit sauces, and jellies. FAC ¶ 10-14. Defendant's Products are fruit snack bars that contain fruit sauce/jelly. *Id.* See *Hayes v. Kraft Heinz Co.,* No. 1:23-CV-16596, 2024 WL 4766319, at *4 (N.D. Ill. Nov. 13, 2024) (where functionally identical allegations about citric acid's function as a preservative in a macaroni and cheese product were held to be "enough to withstand a motion to dismiss.").

Furthermore, Defendant's reliance on Hu is flawed. The plaintiffs in Hu failed to plead a factual basis for the challenged ingredients to function as preservatives in the challenged products. *See Hu v. Herr Foods, Inc.* 251 F. Supp. 3d 813 (E.D. Pa. 2017). Meanwhile, Plaintiff here plead a detailed factual basis regarding how citric acid functions as a preservative specifically in fruit sauces. FAC ¶¶ 10-14. For these reasons, Courts have declined to follow Hu. *See Simeone v. T. Marzetti Co.,* 2023 WL 2665444, at *6 (S.D.N.Y. Mar. 28, 2023) ("Defendant's citation to *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813 (E.D. Pa. 2017) is unavailing because the plaintiff there failed to explicitly allege that citric acid acted as a preservative in the product at issue, id. at 821–822; Plaintiffs here have explicitly alleged that '[c]itric acid stabilizes the active ingredients in the Products and thus is a preservative'… Plaintiffs' allegations are sufficient at this stage to state a claim that citric acid works as a preservative in the Products."); *Cabrega v. Campbell Soup Co.*, 2019 WL 13215191, at *10 (E.D.N.Y. Nov. 18, 2019) ("[U]nlike the complaint in Hu I, the FAC plausibly alleges that the

ingredients at issue, i.e., citric acid and ascorbic acid, actually function as a preservative in the Products. Again, plaintiffs need not plead specific evidence or extra facts to further 'substantiate that assertion,' on a Rule 12(b)(6) motion to dismiss."); *Kelly v. Beliv LLC*, 640 F. Supp. 3d 286, 298 (S.D.N.Y. 2022) ("The *Hu* court's reasoning is unpersuasive. In reaching its decision, the district court noted that plaintiff had not supported her definition of preservative; however, as discussed, Plaintiff's definition of "preservative" is supported by the common definition of that term.").

This Court should follow the several courts holding that the function of an ingredient in a food product presents a question of fact that cannot be decided on a motion to dismiss. *See*, *e.g.*, *Simeone v. T. Marzetti Co.*, 2023 WL 2665444, at *6 (S.D.N.Y. Mar. 28, 2023) (denying motion to dismiss where the plaintiff alleged citric acid functions as a preservative); *Quiroz v. Beaverton Foods, Inc.*, 2019 WL 1473088, at *8 (E.D.N.Y. Mar. 31, 2019) (same); *Kubilius v. Barilla Am.*, Inc., 2019 WL 2861886, at * 4 (N.D. Ill. July 2, 2019) (rejecting the defendant's argument that the plaintiff "was required to plead facts indicating that citric acid 'functions as a preservative' in the defendant's product, i.e., a jar of pasta sauce); *see also Branca v. Bai Brands*, *LLC*, 2019 WL 1082562, at * 4-5 (S.D. Cal. Mar. 7, 2019) (holding that the Court could not make a factual determination as to whether malic acid functions as an artificial flavor in the product at issue on a motion to dismiss at the pleadings stage); *Morris v. Mott's LLP*, 2019 WL 948750, at * 4 (C.D. Cal. Feb. 26, 2019) (holding that the defendant's argument "that the malic acid in its snacks functions exclusively as pH control agent and not as a flavor ... [was] inappropriate for determination on a motion to dismiss." (quotations and citation omitted)); *Sims v. Campbell Soup Co.*, 2018 WL 7568640, at * 5 (C.D. Cal. Sept. 24, 2018) ("Defendants' arguments that malic acid is not, or does not

12

function as, a flavor go to disputed factual questions that the Court cannot resolve at the motion to dismiss stage."); *Ivie v. Kraft Foods Global, Inc.*, 2013 WL 685372, at * 10 (N.D. Cal. Feb. 25, 2013) ("[T]he factual determinations of whether maltodextrin is used as a sweetener and/or sodium citrate is used as a flavoring agent in this particular product, and whether a reasonable consumer would have thus been misled by the 'no artificial sweeteners or preservatives' label, are inappropriate for determination on a motion to dismiss."); *Silva v. Smucker Nat. Foods, Inc.*, 2015 WL 5360022, at * 8 (E.D.N.Y. Sept. 14, 2015) (holding that the issue of whether phosphoric acid functioned as a chemical preservative in the product at issue "is a question of fact that cannot be decided as a matter of law at th[e] [pleadings] stage of the case.").

Second, Defendant's argument that consumers do not interpret "no preservatives" to mean "no citric acid" is a dispute of fact inappropriate at this stage. As Plaintiff explained above, citric acid is a chemical preservative because of its chemical properties that tend to retard the deterioration of food by creating an environment inhospitable to microbes. FAC ¶ 10-14. Plaintiff also explained how citric acid actually does function as a preservative in the Products. *Id.* As a result, its reasonable that a consumer may interpret "no preservatives" to exclude citric acid. *Id*. Defendant's assertion that consumers would require more information before concluding that Defendant's Products would not contain citric acid explicitly asserts an inappropriate factual dispute as to what reasonable consumers believe about product labeling and understand about chemistry. See *Morris v. Mott's LLP*, 2019 WL 948750, at * 4 (C.D. Cal. Feb. 26, 2019) (holding that the defendant's argument "that the malic acid in its snacks functions exclusively as pH control agent and not as a flavor ... [was] inappropriate for determination on a motion to dismiss." (quotations and citation omitted)); *Sims v. Campbell Soup Co.*,

2018 WL 7568640, at * 5 (C.D. Cal. Sept. 24, 2018) ("Defendants' arguments that malic acid is not, or does not function as, a flavor go to disputed factual questions that the Court cannot resolve at the motion to dismiss stage."); *Ivie v. Kraft Foods Global, Inc.*, 2013 WL 685372, at * 10 (N.D. Cal. Feb. 25, 2013) ("[T]he factual determinations of whether maltodextrin is used as a sweetener and/or sodium citrate is used as a flavoring agent in this particular product, and whether a reasonable consumer would have thus been misled by the 'no artificial sweeteners or preservatives' label, are inappropriate for determination on a motion to dismiss.")

Third, Defendant's back label arguments explicitly endorse "bate and switch" sales tactics in direct contravention to the explicit language of the California Consumer Protection statutes at issue in this case. The FAL prohibits engaging in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...or...to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised." Cal. Bus. & Prof. Code § 17500. Likewise, "...unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising..." Cal. Bus. & Prof. Code § 17200. "Placing a disclaimer or a fine-print ingredients list on a product's back label does not necessarily absolve a defendant of liability for deceptive statements on the front label." *Whiteside v. Kimberly Clark Corp.,* 108 F.4th 771, 778 (9th Cir. 2024). The UCL, FAL, and CLRA prohibit advertising that is "either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams v.*

*Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951, 119 Cal.Rptr.2d 296, 45 P.3d 243 (2002)). In *Williams*, the defendant sold a product called "Fruit Juice Snacks" that displayed several fruits on the front label. *Id.* at 936. The product's side-label ingredients list disclosed that the only fruit ingredient was white grape concentrate. *Id.* The Ninth circuit reversed dismissal of the plaintiff's UCL and CLRA claims stating that they "disagree[d] with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id.* at 939.

The *Williams* decision is controlling the issue of the "front-back dichotomy." See *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1167, 237 Cal.Rptr.3d 683 (2018). The *Brady* court followed *Williams*, holding that "a back label that [does] not *confirm* what was on the front label [cannot] defeat ... a pleading stage challenge to the plaintiff's UCL, CLRA, false advertising and warranty claims." *Id.* at 1168. (emphasis in original). The misleading front label in *Brady* stated "One A Day" when consumers in fact had to take two vitamins daily to achieve the recommended dosage for the vitamin product at issue. *Id.* at 1178-80. This two-a-day dosage requirement was disclosed on the vitamin product's back label. *Id.* The *Brady* still rejected the vitamin product's back-label disclosure and "the assumption that reasonable consumers of vitamins are back-label scrutinizers." *Id.* at 1174.

*Bell v. Publix Super Markets, Inc.* is informative on this point. 982 F.3d 468, 478 (7th Cir. 2020). In *Bell*, the plaintiff challenged the label "100% grated parmesan cheese" as deceptive where the ingredients label stated the product contained other ingredients. *Bell*, 982 F.3d at 468-469. The trial court dismissed the claims on the basis that a reasonable consumer, using common sense, would scrutinize the packaging to determine that the product contained more than just

cheese, such that "100% grated parmesan cheese" reasonably meant the cheese was "100% grated" not "100% cheese." *Id*. On appeal, the Seventh Circuit reversed holding that, "what matters most is how real consumers understand and react to the advertising… [c]onsumer protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product." Id. at 478.

Consumer protection statutes do not impose a duty on reasonable consumers to parse the language of "no preservatives" to determine if Defendant actually meant "this product does not contain chemicals that prevent food from spoiling" or "this product contains preservatives, but we are using them because they taste good". It should not be incumbent on consumers to parse the language on the front of a package and investigate the fine print on the back to make sure Defendant does not trick them. Reasonable consumers are not required by California's consumer protect statutes to treat consumer product packaging with the same level of scrutiny as lawyers reviewing contract language. See *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1167, 237 Cal.Rptr.3d 683 (2018).

## B. PLAINTIFF ADEQUATELY ALLEGED RELIANCE ON DEFENDANT'S MISLEADING LABELING

Defendant's argument that Plaintiff failed to plead that she relied on the misleading "no preservatives" label ignores allegations in Plaintiff's First Amended Complaint, and is wrong. Adequately pleading claims for violation of the UCL, FAL, and CLRA requires establishing actual reliance, "that is, that the plaintiff suffered economic injury as a result of his or her reliance on the truth and

accuracy of the defendant's representations." *Chapman v. Skype Inc.,* Cal. Rptr. 3d 864, 873 (2013). "[A] 'plaintiff is not required to allege that [the challenged] misrepresentations were the sole or even the decisive cause of the injury-producing conduct.'" *Chapman* 162 Cal. Rptr. 3d 873 (2013). "[A]ctual reliance, or causation, is inferred from the misrepresentation of a material fact." *Id.* at 874. "To satisfy the requirement of pleading actual reliance, or causation, in connection with false advertising for purposes of the UCL and the false advertising law, a plaintiff need only allege a misrepresentation of a material fact." *Id.*

Here, Plaintiff explicitly alleged that when she purchased the Product, she made her purchasing decision because of the label that read "no preservatives" and depicted a cropping of the label and a photograph of Plaintiff's literal Product that she purchased. FAC ¶ 18. Plaintiff explicitly stated that "but for Defendant's misrepresentations, misleading and fraudulent labeling, Plaintiff would not have purchased the Product or would have paid less for the Product." FAC ¶ 22. Plaintiff then established that "no preservatives" was material by explicitly alleging that she expected to receive a benefit of avoiding negative effects of consumer preservatives, and she expected a benefit of her bargain would be to receive a premium Product that would not contain preservatives. FAC ¶ 26, 27. As explained above, Plaintiff established that Defendant's "no preservatives" label is deceptive because citric acid is a preservative or functions as one in the Products.

17

Therefore, Plaintiff's actual reliance may also be inferred from her materiality allegations.

## C. DEFENDANT'S ATTEMPT TO DISMISS NATIONWIDE CLAIMS IS PREMATURE AND IMPROPER.

Defendant's argument in support of striking Plaintiff's claims on behalf of nationwide consumers should be denied, as it prematurely seeks to resolve disputed factual issues about whether a nationwide class may be certified. In rejecting premature efforts to dismiss class allegations, courts have repeatedly recognized that where, as here, the factual issues critical to class certification are disputed, a court may not resolve the merits of plaintiffs' request for certification without the benefit of a developed record.[2]

---

[2] *See generally* 7AA Wright, Miller & Kane, Federal Practice and Procedure § 1785.3 ("As a practical matter, the court's [certification] determination usually should be predicated on more than the complaint itself affords.") *See I.B. v. Facebook, Inc.*, 2012 U.S. Dist. LEXIS 154327 (N.D. Cal. Oct. 25, 2012) (denying as premature a motion to strike class allegations based on Facebook's argument that allegations presented highly individualized facts); *Clerkin v. MyLife.com, Inc.*, 2011 U.S. Dist. LEXIS 96735 (N.D. Cal. Aug. 29, 2011) ("Rule 12(b)(6) is not the appropriate procedural vehicle to challenge class allegations. Accordingly, Defendants' Rule 12(b)(6) motion concerning Plaintiffs' class allegations is denied."); *Cholakyan*, 796 F. Supp. 2d at 1245-46 (rejecting motion to dismiss class allegations in advance of a motion for class certification as class allegations are disputed and require ample discovery); *Hibbs-Rines v. Seagate Techs., LLC*, No. C08-0540, 2009 U.S. Dist. LEXIS 19283, at *7-8 (N.D. Cal. Mar. 2, 2009) ("Discovery is integral to developing the shape and form of a class action and granting of motions to dismiss class allegations before discovery has commenced is rare'") (internal quotations and citations omitted); *Lyons v. Coxcom, Inc.*, 718 F.

Since the Supreme Court issued *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) courts have repeatedly denied premature requests to dismiss class allegations, recognizing discovery is necessary to evaluate class claims. *See, e.g.*, *Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2011 U.S. Dist. LEXIS 147489, at *17-18 (N.D. Cal. Dec. 22, 2011) (denying defendants' motion to dismiss class claims as premature); *Chen-Oster v. Goldman, Sachs & Co.*, No. 10 Civ. 6950, 2012 U.S. Dist. LEXIS 12961, at *13-14 (S.D.N.Y. Jan. 19, 2012) (denying motion to strike class allegations as premature in Title VII gender discrimination action); *Connelly v. Hilton Grand Vacations Co.*, 2012 U.S. Dist. LEXIS 81332, *7 (S.D. Cal. June 11, 2012) ("To the extent that Hilton seeks to 'resolve class claims at the pleading stage, … however, its motion is improperly brought pursuant to Federal Rule of Civil Procedure 12(b)(6).''); 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1798 (3d ed. 2005) ("Compliance with Rule 23 prerequisites theoretically should not be tested by a motion to dismiss for failure to state a claim or by a summary-judgment motion.") (Emphasis added).

Defendant seeks to prejudice Plaintiff by denying her class discovery necessary for a properly supported motion for class certification, a motion that

Supp. 2d 1232, 1235-36 (S.D. Cal. 2009) (denying motion to strike class allegations).

requires Plaintiffs to put forward evidence that the prerequisites of Rule 23 are met. Cognizant of this burden, Defendant unfairly attempts to shift its burden to Plaintiff prior to Plaintiff's filing of a motion for class certification, thereby precluding the introduction of extrinsic evidence necessary to satisfy the prerequisites of Rule 23(a) and (b). For these reasons, the Court should decline to dismiss class allegations prior to a motion for class certification. *See supra.*

## D.    PLAINTIFF HAS STANDING TO BRING CLAIMS FOR ALL PRODUCTS LISTED IN THE COMPLAINT

Defendant challenged Plaintiff's Article III and statutory standing to assert his claims regarding the Products she did not personally purchase. "The law of Article III standing is built on a single basic idea – the idea of separation of powers." *Allen v. Wright*, 468 U.S. 737, 752 (1984). Article III requires that a party "show he personally has suffered some actual or threatened injury." *Valley Forge Christian College v. Americans United*, 454 U.S. 464, 472 (1982). Standing is a "threshold issue in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "Constitutional limits on standing eliminate claims in which plaintiff has failed to make out a case or controversy between himself and defendant, and, in order to satisfy [the] judicial article of Constitution, plaintiff must show that he personally suffered some actual or threatened injury as result of putatively illegal conduct of defendant." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1978).

The purpose and scope of constitutional standing doctrine is narrow. Its goal is to "aid the federal judiciary to avoid intruding impermissibly upon the

20

powers vested in the executive and legislative branches, by preventing courts from issuing advisory opinions not founded upon the facts of a controversy between truly adverse parties." *Scott v. Pasadena*, 306 F.3d 646, 654 (9th Cir. 2002). The focus of standing is on the parties' right to have the court decide the merits of the dispute. A plaintiff must also meet the "case or controversy" requirement articulated by the Supreme Court in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) and its progeny. In that landmark case, the Court held that "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Id.* at 560. This requirement is applied using the three-element test set forth in *Lujan*: 1) Injury-in-fact; 2) Causation; and 3) Redressability. *Id.* at 560-561. In the instant matter, Defendant attacks Plaintiff's standing to "Injury-in-fact" to different flavors of the same fruit bar products.

Generally speaking, cases involving false advertising on a company's standard packaging or otherwise at the point of sale are particularly ripe for application on a broad class wide basis.[3] In these cases, as in the case at bar, there

---

[3] *Bruton v. Gerber Products Company*, 961 F.Supp.2d 1062 (N.D.Cal.2013) (Baby food manufacturer's products bought by consumer were misbranded and deceptive, due to common labeling that stated "excellent source" and "good source" claims on label.); *Von Koenig v. Snapple Beverage Corp.*, 713 F.Supp.2d 1066 (E.D. Cal. 2010) (beverage manufacturer's mislabeling its drinks as "natural" was upheld as unlawful conduct in mislabeling class action); *Allen v. Hyland's Inc.*, 300 F.R.D. 643 (C.D. Cal. 2014) (common and similar misleading labels on packaging of 12 different homeopathic products subjected case to class treatment and class-wide proof, and court certified claims); *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468 (C.D. Cal. 2012) (court certified product mislabeling claims in product packaging class action where packaging failed to disclose anti-frizz hair care serum was flammable, even where the danger of such product catching fire did not materialize for the majority of consumers who purchased the product – affirmed on reconsideration 2012 WL 2458118); *Ortega v. Natural Balance, Inc.*, 300 F.R.D.

was one singular type of mislabeling that applies in the exact same way to all the falsely advertised products. *See e.g. Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) (certifying a class of all purchasers of the popular Arizona Iced Tea brand beverages in a false advertising case premised on statements that the beverages were labeled "all natural"); *Medrazo v. Honda of North Hollywood,* 82 Cal.Rptr.3d 1 (2008) (certifying a class of all purchasers of motorcylces of numerous makes and models that did not have hanger tags); *Ortega v. Natural Balance, Inc*., 300 F.R.D. 422 (C.D. Cal. 2014) (holding that typicality is met where a class representative is exposed to the same misleading packaging as the proposed class which they seek leave to represent). As the 7th Circuit noted in the case of *Suchanek v. Sturm Foods, Inc*., 764 F.3d 750, 755 (7th Cir. 2014), "[t]he question whether the GSC packaging was likely to mislead a reasonable consumer is common to the claims of every class member." Stated otherwise, where all class members were exposed to the same packaging, and same advertisements at the point of sale when purchasing products, which contained the same allegedly misleading statements, such a case is ideal for class-wide treatment.

Defendant relies on *Lorentzen v. Kroger Co.* to support its minority view that plaintiffs do not have standing to pursue claims regarding substantially similar Products. *Lorentzen v. Kroger Co.,* 532 F. Supp. 3d 901, 908 (C.D. Cal.

---

422 (C.D. Cal.2014) (mislabeling class action certified due to common product labeling alleged to be misleading, and holding that whether packaging was false or misleading was subject to an objective reasonable consumer standard, and whether alleged misrepresentations were material, so as to trigger rebuttable presumption of reliance and causation, could be resolved on class-wide basis*); Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524 (C.D. Cal. 2011) (Certification granted for mislabeling class claims where common advertisements promised dietary supplements offered "up to six times" more absorption and effectiveness than competing products).

2021). This Court should not follow *Lorentzen* because that ruling is not consistent with the separation of powers focused analysis of the Supreme Court when ruling upon Article III standing issues. *See Allen v. Wright*, 468 U.S. 737, 752 (1984). Plaintiff has standing to bring claims related to substantially similar Products, because Plaintiff has standing to be before this Court. *See Id.* Defendant has articulated no reason why the separation of powers is challenged or harmed by this Court adjudicating the same fraudulent conduct across extremely similar Products of which contained the same false labels and same challenged ingredients. *See Id.* Additionally, the overwhelming majority of district court class certification orders agree that classes may be certified on a broader basis than the product purchased by the plaintiff.[4]

---

[4] *See Forcellati v. Hyland's, Inc.,* 2014 WL 1410264 at *10 (C.D. Cal 2014); *Werdebaugh v. Blue Diamond Growers,* 2014 WL 2191901 at *17 (N.D. Cal 2014 *Brazil v. Dole Packaged Foods, LLC,* 2014 WL 2466559 at *10 (N.D. Cal 2014); *Davidson v. Apple, Inc.,* 2018 WL 2325426 at *8-9 (N.D. Cal 2018); *Lanovaz v. Twinings North America, Inc.,* 2014 WL 1652338 at *4 (N.D. Cal 2014); *Rivera v. Bio Engineered Supplements & Nutrition, Inc.,* 2008 WL 4906433 at *6-7 (C.D. Cal 2008); *Pecover v. Electronic Arts, Inc.,* 2010 WL 8742757 at *12 (N.D. Cal 2010); *Gallucci v. Boiron, Inc.,* 2012 WL 5359485 at *3 (S.D. Cal 2012); *In re Static Random Access memory (SRAM) Antitrust Litigation,* 264 F.R.D. 603, 609 (N.D. Cal 2009); *Castillo v. Bank of America, NA,* 980 F.3d 723, 730 (9th Cir. 2020); *Ries v. Arizona Beverages USA LLC,* 287 F.R.D. 523, 539-540 (N.D. Cal. 2012); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998); *Donohue v. Apple, Inc.,* 871 F.Supp.2d 913, 922 (N.D. Cal. 2012); *Anderson v. Jamba Juice Co.,* 888 F.Supp.2d 1000, 1006 (N.D. Cal. (2012); *Wilson v. FritoLay North America, Inc.,* 2013 WL 5777920 at *4 (N.D. Cal. 2014); *Astiana v. Dreyer's Grand Ice Cream,* 2012 WL 2990766 at *13 (N.D. Cal. 2012); *Ang v. Bimbo Bakeries USA, Inc.,* No. 13-cv-1196, Slip Op. at 14 (N.D. Cal. 2014); *Rojas v. General Mills, Inc.,* 2014 WL 1248017 at *10 (N.D. Cal. 2014); *Cardenas v. NBTY, Inc.,* 870 F.Supp.2d 984, 992 (E.D. Cal. 2012); *Koh v. S.C. Johnson & Son, Inc.,* 2010 WL 94265 at *3 (N.D. Cal. 2010); *Bruno v. Quten Research Inst., LLC,* 280 F.R.D. 524, 534-535 (C.D. Cal. 2011); *Astiana v. Kashi Co.,* 291 F.R.D. 493, 505 (S.D. Cal. 2013); *Jones v. ConAgra Foods, Inc.,* 2014 WL 2702726 at *6

23

In this case, Plaintiff alleged that each and every Product purchased by each and every member of the proposed class was subject to a label on the Product packaging that the Products contained "no preservatives" which is objectively false because the Products contain citric acid. FAC ¶ 10. Plaintiff has adequately alleged that as a result of Defendant's conduct she has suffered an injury. FAC ¶ 32.  Plaintiff's allegations must be taken as true at the pleading stage, and Plaintiff alleges that the conduct which happened to her was common across all of the listed Products. Defendant's arguments that Plaintiff does not have Article III or statutory standing fail

## E.   PLAINTIFF'S REQUEST FOR PUNITIVE DAMAGES SHOULD NOT BE STRIKEN

Defendant's argument that Plaintiff's punitive damages should be stricken is premature and ignores allegations in the First Amended Complaint. "The CLRA prohibits deception and permits recovery of punitive damages…" *Benson v. S. California Auto Sales, Inc.,* 239 Cal. App. 4th 1198, 1210, 192 (2015). Punitive damages are recoverable in those fraud actions involving intentional, but not negligent, misrepresentations. *All. Mortg. Co. v. Rothwell,* 10 Cal. 4th 1226, 1241, (1995). The court must accept as true all material allegations in the complaint, as

*(N.D. Cal. 2014); Chavez v. Blue Sky Natural Beverage Co., 268 F.R.D. 365, 378 (N.D. Cal. 2010); Brown v. Hain Celestial Group, Inc., 913 F.Supp.2d 881, 891 (N.D. Cal. 2012); Kosta v. Del Monte Foods, Inc., 308 F.R.D. 217, 227 (N.D. Cal. 2015); Ehret v. Uber Technologies, Inc., 148 F.Supp.3d 884, 893 (N.D. Cal. 2015); In re Cathode Ray Tube (CRT) Antitrust Litigation, 308 F.R.D. 606, 613 (N.D. Cal. 2015); Allen v Similasan Corp., 306 F.R.D. 635, 645-646 (S.D. Cal. 2015); In re Korean Ramen Antitrust Litigation, 2017 WL 235052 at \*18 (N.D. Cal. 2017); Todd v. Tempur-Sealy International, Inc., 2016 WL 5746364 at \*5 (N.D. Cal. 2016); Lilly v. Jamba Juice Co., 308 F.R.D. 231 (N.D. Cal. 2014); Krommenhock v. Post Foods, LLC, 334 F.R.D. 552, 562 (N.D. Cal. 2020)*

well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to plaintiffs. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

Plaintiff's claims for the violation of the CLRA are indicative of fraudulent conduct, and for the purposes of pleading, are sufficient to establish that Plaintiff may seek punitive damages. Plaintiff provided sources that support the inference that citric acid is a well-known preservative and is well documented for its use as a preservative in fruit, fruit sauces, and jellies. Plaintiff's First Amend. Compl. pp 11-16. Yet, Defendant intentionally labeled its Product with explicitly promises that the Product would contain "No Preservatives". *Id.* There is a reasonable inference to be drawn at this stage that Defendant intentionally mislabeled the Products. See *Parks,* 51 F.3d at 1484.

## V.   CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests the Court deny Defendant's Motion to Dismiss Plaintiff's First Amended Complaint with prejudice, order Defendant to file an Answer to Plaintiff's First Amended Complaint, and award such other relief as the Court deems appropriate under the circumstances. In the alternative, Plaintiff requests the Court grant him leave to file a Second Amended Complaint to correct any deficiencies in her First Amended Complaint.

Dated:  September 12, 2025

Respectfully submitted,

LAW OFFICES OF TODD M. FRIEDMAN, P.C

By: /s/ Todd M. Friedman
TODD M. FRIEDMAN, ESQ.
Attorney for Plaintiff

## PROOF OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and not a party to the above-entitled cause. On September 12, 2025, I served a true copy of the Plaintiff's Opposition to Defendant's Motion to Dismiss First Amended Complaint on all counsel of record via the ECF Filing System:

Executed on September 12, 2025.

[X] I hereby certify that I am a member of the Bar of the United States District Court, Central District of California.

[ ] I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

[X] I hereby certify under the penalty of perjury that the foregoing is true and correct.


By:      /s/ Todd M. Friedman
         Todd M. Friedman, Esq.
         Attorney for Plaintiff