UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 25-5165-GW-MBKx | Date | October 14, 2025 |
| Title | *Mary Antossyan v. The Kroger Co.* | | |

| | |
|---|---|
| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:**    **IN CHAMBERS - TENTATIVE RULING ON DEFENDANT THE
KROGER CO.'S MOTION TO DISMISS FIRST AMENDED
COMPLAINT AND STRIKE ALLEGATIONS [20]**

Attached hereto is the Court's Tentative Ruling on Defendant's Motion [20] set for hearing on October
16, 2025 at 8:30 a.m.

                                                                                      :

                                              Initials of Preparer    JG

***Mary Antossyan v. The Kroger Co.***; Case No. 2:25-cv-05165-GW-(MBKx)
Tentative Ruling on Motion to Dismiss

Before the Court is Defendant The Kroger Co.'s ("Kroger") Motion to Dismiss (the "Motion"). *See* Motion, Docket No. 20. The Court has considered the Motion, Plaintiff Mary Antossyan's opposition ("Opp.," Docket No. 24), and Kroger's reply ("Reply," Docket No. 26). For the reasons stated herein, the Court would **GRANT** the Motion in part with leave to amend and **DENY** it in part. Specifically, the Court would dismiss Antossyan's nationwide class allegations and claim for punitive damages, find that she has sufficiently stated a claim under the applicable pleading standards, and defer certain issues raised by Kroger until class certification.

## I.    Background[1]

Kroger manufactures, advertises, markets, sells, and distributes various products under its Simple Truth brand, including Simple Truth Brand Fruit & Grain Bars (the "Bars"). *See* First Amended Complaint ("FAC"), Docket No. 18, ¶¶ 9-10. The Bars have a fruit jelly filling that consists of syrup, sugar, fruit puree, pectin, coloring, flavoring, and citric acid. *Id*. ¶ 11.

Antossyan purchased a box of strawberry-flavored Bars for $3.29 at the Ralph's grocery store located at 1200 North Central Avenue, Glendale, California, on or about February 4, 2025. *Id*. ¶ 17. As shown in the below image,[2] the Bars represent that they contain "[n]o preservatives:"



---

[1] For the purposes of this Motion, the Court accepts all well-pleaded factual allegations in the Complaint as true. *See Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 195 (2024).

[2] The Court has reproduced here a higher-quality image of the Bars' front label provided by Kroger that appears identical to the image Antossyan included within her FAC. *See* Docket No. 21-1.

FAC ¶ 18.

Antossyan "made her purchasing decision because of the labeling on the Product that read 'no preservatives';" however, they in fact contain citric acid. *Id*. ¶¶ 12, 18. Citric acid has a preservative function, and the Food and Drug Administration ("FDA") has specifically noted its preservative use in fruit jellies. *Id*. ¶ 12. Antossyan also cites FDA regulations, an FDA warning letter, a United States Department of Agriculture ("USDA") report, and a USDA guideline for label approval in support of her contention that citric acid is a preservative. *Id*. ¶¶ 13-16.

Antossyan contends that she would not have purchased the Bars had she known about the preservative ingredient therein or would have paid less for them. *Id*. ¶ 22. Similar products sold by Kroger (*e.g.*, "Fruit & Grain Strawberry Cereal Bars"), that are not advertised as preservative-free, are sold for less. *Id*. ¶ 23, n.7. Antossyan alleges that she has been deprived of her right to true and accurate information about consumer products and the benefit of a truly preservative-free snack bar, would not have purchased the Bars had she known they contained citric acid, and paid a price premium for a preservative-free product. *Id*. ¶¶ 25-29. Antossyan filed this action in the Superior Court of the State of California, Los Angeles County, on May 2, 2025, asserting two causes of action: (1) false advertising under the California False Advertising Law ("FAL"); and (2) unfair, fraudulent, and unlawful business practices under the California Unfair Competition Law ("UCL"). *See generally* Complaint, Docket No. 1-1.

Kroger removed the action to federal court on June 6, 2025. *See* Docket No. 1. Antossyan subsequently filed the FAC, further detailing her factual allegations and asserting an additional cause of action under the California Consumer Legal Remedies Act ("CLRA"). *See generally* FAC. Antossyan brings this action individually, on behalf of a proposed nationwide class of consumers who purchased all varieties of the Bars in the past four years, and for a proposed subclass of California purchasers. *Id*. ¶¶ 39-40. She seeks injunctive relief in the form of corrective advertising as well as actual, punitive, and statutory damages. *Id*. ¶ 85.

Kroger filed this Motion on August 22, 2025, seeking the dismissal of Antossyan's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and, alternately, to strike her class allegations and request for punitive damages under Federal Rule of Civil Procedure 12(f).

II. **Legal Standard**

    A. **Federal Rule of Civil Procedure 12(b)(1)**

Under Rule 12(b)(1), a defendant may move to dismiss for a lack of subject-matter

2

jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'"  *Murthy v. Missouri*, 603 U.S. 43, 56 (2024).  "To satisfy Article III's case or controversy requirement, a plaintiff must establish that she has standing to invoke the jurisdiction of the federal courts."  *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1142 (9th Cir. 2024).  "[T]he irreducible constitutional minimum of standing contains three elements."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

"Injury in fact is the threshold requirement for standing and can be difficult to satisfy."  *Kumar v. Koester*, 131 F.4th 746, 751 (9th Cir. 2025).  "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical."  *Spokeo*, 578 U.S. at 339 (internal quotation marks omitted).  To be concrete, an injury "must actually exist" and cannot be abstract or a "bare procedural violation."  *Id*. at 340-41.  To be particularized, "the injury must affect the plaintiff in a personal and individual way and not be a generalized grievance."  *Food & Drug Admin. v. All. for Hippocratic Med*., 602 U.S. 367, 381 (2024) (internal quotation marks omitted).  Finally, to be actual or imminent as opposed to speculative, "the injury must have already occurred or be likely to occur soon."  *Id*.

### B. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint may be dismissed under Rule 12(b)(6) for one of two reasons: (1) it lacks a cognizable legal theory; or (2) it alleges insufficient facts to support a cognizable legal theory.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material facts as true, and draw

3

all reasonable inferences from well-pled factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). The court is not required, however, to accept as true legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

### C. Applicable Pleading Requirements

"[T]he UCL, CLRA, and FAL[ are] a collection of California consumer protection laws that 'prohibit unlawful, unfair, or fraudulent business practices.'" *Bodenburg v. Apple Inc.*, 146 F.4th 761, 768 (9th Cir. 2025) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016)). "To survive dismissal, each claim must pass two tests: (1) the 'reasonable consumer' test set forth in California case law, and (2) the heightened pleading standard set forth in [Federal Rule of Civil Procedure] 9(b)." *Id*.

#### 1. "Reasonable Consumer" Test

"'Claims under the California consumer-protection statutes are governed by the "reasonable consumer" test.'" *Bodenburg*, 146 F.4th at 769 (brackets omitted) (quoting *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008))). "Under this standard, plaintiffs must show that members of the public are likely to be deceived by the defendant's business practices." *Id*. (internal quotation marks omitted). "This requires more than a mere possibility" that packaging or labeling "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner," but rather "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner*, 838 F.3d at 965 (internal quotation marks omitted).

"[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision" at the pleadings stage. *Williams*, 552 F.3d at 938; *see also Bodenburg*, 146 F.4th at 769. "[I]n federal court, dismissals of UCL, FAL, and CLRA claims at the pleadings stage have 'occasionally been upheld,' but such cases are 'rare.'" *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. 2024) (quoting *Williams*, 552 F.3d at 939). "Dismissal is appropriate when 'the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be deceived.'" *Id*. (quoting *Williams*, 552 F.3d at 939).

However, "[p]lacing a disclaimer or a fine-print ingredients list on a product's back label

4

does not necessarily absolve a defendant of liability for deceptive statements on the front label." *Id*.; *see Williams*, 552 F.3d at 939 (reversing dismissal of UCL and CLRA claims because "reasonable consumers" were not "expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box"). Nevertheless, "a product's back label may be considered at the pleadings stage if the front label is ambiguous." *Id*. (citing *McGinity v. Procter & Gamble Co*., 69 F.4th 1093, 1099 (9th Cir. 2023)). Finally, "contextual factors aside from the back label can defeat claims that a product's label is misleading." *Id*. at 779 (citing *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021)).

2. Rule 9(b)

A party alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted). Rule 9(b)'s particularity requirement applies to a pleading in its entirety, including consumer protection claims such as those under CLRA and UCL, when a plaintiff alleges "a unified course of fraudulent conduct" and "rel[ies] entirely on that course of conduct as the basis of th[ose] claim[s]." *Id*. at 1125.

## III. Discussion

### A. Judicial Notice

As a threshold matter, Kroger seeks judicial notice of (1) images of the front and back label of the strawberry-flavored Bars that Antossyan purchased; and (2) a 2015 USDA report entitled *Citric acid and salts* ("USDA Report"). *See generally* Request for Judicial Notice ("RJN"), Docket No. 21; Declaration of Daniel H. Leigh ("Leigh Decl."), Exs. A & B, Docket No. 20-1. Kroger contends that the label and report qualify for judicial notice under incorporation-by-reference doctrine. *Id*. Antossyan has not objected to the RJN.

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure," subject to "two exceptions:" "the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 998 (9th Cir. 2018). Under incorporation-by-reference doctrine, "[a] court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy." *Marder v.*

*Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims."  *Khoja*, 899 F.3d at 1002.

"Courts addressing motions to dismiss product-labeling claims routinely take judicial notice of images of the product packaging."  *Kanfer v. Pharmacare US, Inc*., 142 F. Supp. 3d 1091, 1098-99 (S.D. Cal. 2015).  Packaging is evidently central to Antossyan's claim, and she has included photographs of portions of the Bars' packaging within the FAC.  *See* FAC ¶¶ 18, 24.  The exhibit Kroger contends represents the full packaging of the Bars that Antossyan purchased appears consistent with the images of the product packaging Antossyan has provided in part, and she has not challenged the authenticity of Kroger's exhibit.  *See id*.; *cf.* Leigh Decl., Ex. A. Therefore, the Court **GRANTS** judicial notice as to the product label.

The FAC also directly quotes and cites to the USDA Report.  *See* FAC ¶ 15.  The USDA Report is among several citations to which Antossyan refers in support of her contention that citric acid is a preservative, which is a central fact underpinning her claims.  *See id*. ¶¶ 12-16.  Antossyan has not objected to the authenticity of the USDA Report that Kroger has offered purportedly in its entirety.  The Court therefore **GRANTS** judicial notice as to the USDA Report.

## B.  Standing

Antossyan's standing to assert claims as to the strawberry variety of the Bars that she personally purchased does not appear to be in dispute.  *See* FAC ¶ 17.  However, Kroger objects to Antossyan's effort to represent a class of consumers who purchased any variety of the Bars, *id*. ¶ 39, consistent with her contention that "all varieties" of the Bars both contain citric acid and purport on their labels to contain "no preservatives."  *Id*. ¶ 10.  Kroger argues that Antossyan "lacks both statutory and Article III standing" to bring claims regarding Bars other than the strawberry variety she purchased and submits that those should be dismissed under Rules 12(b)(1) and 12(b)(6).  *See* Motion at 20-21.  Per Kroger, Antossyan "may only bring claims regarding labels she claims to have relied on and been injured by."[3]  *Id*.  Antossyan argues that an "overwhelming majority" of courts permit plaintiffs to bring class claims in false labeling cases arising out of substantially similar products to the specific product they purchased.  *See* Opp. at 21-23.

---

[3] Kroger also challenges Antossyan's standing to bring claims on behalf of a nationwide class "under the consumer protection laws of states other than California."  *See* Motion at 20 n.9.  Because Antossyan has not asserted any claims under the laws of states other than California, the Court declines to address this argument.

"There is a split in authority among district courts in the Ninth Circuit regarding whether plaintiffs have Article III standing to bring claims for products they did not personally purchase but that were purchased by unnamed class members." *Ringler v. J.M. Smucker Co.*, 783 F. Supp. 3d 1229, 1245 (C.D. Cal. 2025) (brackets and internal quotation marks omitted). "District courts in California have taken three primary approaches to the question of whether a class action plaintiff may sue over products that they did not themselves purchase." *Davis v. The Kroger Co.*, No. 2:22-cv-02082-MEMF-(RAOx), 2023 WL 9511156, at *13 (C.D. Cal. Sept. 22, 2023).

"The prevailing view . . . is that class action plaintiffs can bring claims for products they did not purchase as long as the products and alleged misrepresentations are substantially similar." *Ringler*, 783 F. Supp. 3d at 1245 (internal quotation marks omitted); *see Krystofiak v. BellRing Brands, Inc.*, 737 F. Supp. 3d 782, 793 (N.D. Cal. 2024) ("Plaintiffs have standing to pursue claims regarding unpurchased products if Plaintiffs can establish substantial similarity between the purchased and unpurchased products."); *J.J. v. Ashlynn Mktg. Grp., Inc.*, No. 24-cv-00311-GPC-(MSBx), 2025 WL 1811854, at *11 (S.D. Cal. July 1, 2025) (evaluating substantial similarity); *In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1178 (S.D. Cal. 2024) (same); *Daly v. Amazon.com, Inc.*, 718 F. Supp. 3d 1378, 1385 (W.D. Wash. 2024) (same); *Valiente v. Simpson Imports, Ltd.*, 717 F. Supp. 3d 888, 896-97 (N.D. Cal. 2024) (same); *Calcagno v. Kipling Apparel Corp.*, No. 23-cv-2247-BAS-(BLMx), 2024 WL 3261205, at *3 (S.D. Cal. July 1, 2024) (same); *Collyer v. Catalina Snacks Inc.*, 712 F. Supp. 3d 1276, 1283 (N.D. Cal. 2024); *Mendoza v. Procter & Gamble Co.*, 707 F. Supp. 3d 932, 945-46 (C.D. Cal. 2023) (same); *Brown v. Food for Life Baking Co.*, 658 F. Supp. 3d 732, 741 (N.D. Cal. 2023) (same); *Roffman v. Rebbl, Inc.*, 653 F. Supp. 3d 723, 728-29 (N.D. Cal. 2023) (same); *Clevenger v. Welch Foods Inc.*, No. 20-cv-018599-CJC-(JDEx), 2022 WL 16964009, at *4 (C.D. Cal. Feb. 25, 2022) (same).

A minority of courts reject the "substantial similarity" test as inconsistent with the requirements of standing and hold categorically that a plaintiff may not bring claims predicated on products she did not personally purchase. *See, e.g.*, *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 908-09 (C.D. Cal. 2021); *Ringler*, 783 F. Supp. 3d at 1245-46; *Oh v. Fresh Bellies, Inc.*, No. 24-cv-5417-PSG-(JPRx), 2024 WL 4500727, at *4 (C.D. Cal. Oct. 15, 2024).

The third approach defers these issues for class certification in line with the Ninth Circuit's suggestion that any issue arising out discrepancies between claims of named plaintiffs and absent class members is more appropriately resolved at that stage. *See Melendres v. Arpaio*, 784 F.3d

1254, 1262 (9th Cir. 2015) ("any issues regarding the relationship between the class representative and the passive class members – such as dissimilarity in injuries suffered – are relevant only to class certification, not to standing." (internal quotation marks omitted)).  Courts following this approach decline to resolve potential issues as to products not purchased by named plaintiffs but only by unnamed class members as premature at the pleading stage.  *See, e.g.*, *Davis*, 2023 WL 9511156, at *14; *Moore v. EO Prods., LLC*, No. 22-cv-07618-JST, 2023 WL 6391480, at *4 (N.D. Cal. Sept. 29, 2023); *Scheibe v. Fit Foods Distribution, Inc.*, No. 23-cv-220 JLS (AHG), 2023 WL 7434964, at *8 (S.D. Cal. Nov. 8, 2023).[4]  The Court finds this approach to be "most consistent" with *Melendres* and "related case law on class actions."[5]  *Davis*, 2023 WL 9511156, at *14.

Moreover, without conducting a full analysis, the Court notes that substantial similarity is met when products "contain common ingredients or share alleged misrepresentations on the labels."  *Mendoza*, 707 F. Supp. 3d at 945-46.  Antossyan has indicated that her claims are specific to the product line of Fruit & Grain Bars sold under Kroger's Simple Truth brand, which she contends all "contain[] the same alleged misrepresentations as the purchased products."  FAC ¶ 10.

The Court therefore **DENIES** the Motion insofar as it seeks dismissal of Antossyan's claims for products she did not purchase based upon a lack of standing.

### C.  "Reasonable Consumer" Test

Kroger asserts that Antossyan's claims fail to pass muster under the reasonable consumer test for four distinct but related reasons.  *See* Motion at 8-16.  The Court addresses each in turn.

#### 1.  Function of Citric Acid in Bars

First, Kroger asserts that Antossyan's claims fail because she does not explicitly allege that citric acid functions as a preservative in the Bars, merely implies as much by alleging that in

---

[4] Indeed, this Court has been among those that has "applied [*Melendres*] in the consumer class action context, where the named plaintiffs purported to represent class members who had purchased products the named plaintiffs had not alleged they had purchased."  *See Enriques v. Only What You Need, Inc*., 2:24-cv-08969-GW-(BFMx), Docket No. 59, at 5-6 (C.D. Cal. Sept. 23, 2025) (finding that plaintiff could proceed with class claims predicated on products he did not purchase and that substantial similarity between products would be determined at class certification).

[5] Kroger contends that its statutory standing arguments follow a "similar analysis" as its Article III standing arguments and generally collapses its standing arguments together.  *See* Motion at 21.  While statutory standing is narrower than Article III in that it requires an economic injury, "the statutory standing analysis here is intertwined with the constitutional standing analysis; many district courts in this circuit have found that plaintiffs have statutory standing to bring claims based on products they did not purchase where they pass the substantial similarity test and allege that they suffered some economic injury based on the products they purchased."  *Gamez v. Summit Nats. Inc.*, No. 22-cv-2205894-DSF-(KSx), 2022 WL 17886027, at *6-7 (C.D. Cal. Oct. 24, 2022) (collecting cases).  The Court therefore finds no basis for treating them differently and that it may collectively analyze both at class certification.

general citric acid has preservative effects, though herself concedes citric acid has other uses. *See* Motion at 8-11; FAC ¶ 15. While Kroger admits that Antossyan does specifically contend that citric acid operates as a preservative in the Bars (*see* FAC ¶ 12), Kroger claims that this is a conclusory assertion insufficient to meet her burden. Motion at 10. Rather, Kroger argues that Antossyan must "plead actual facts – such as testing or scientific literature – showing that the citric acid specifically in the Bars functions as a preservative." *Id*. at 9.

Antossyan argues that, categorically, citric acid is a chemical preservative and may have corresponding undesirable effects even if it does not function as a preservative in the Bars. *See* Opp. at 9. Moreover, she argues that the FDA definition of chemical preservatives is not based on "intended function" within a food product, but rather "the likelihood that those chemicals will display characteristics that retard the deterioration of food." *Id*. at 10 (citing 21 C.F.R. § 101.22). Therefore, she asserts, "[e]ven if [Kroger] included citric acid for its flavor, citric acid still maintains the same chemical properties and effect on its environment." *Id*. Both parties cite a plethora of cases, both within and outside of this circuit, regarding the requisite pleading standards for claims predicated on how citric acid operates as a preservative as well as additional cases involving allegations concerning other substances and/or disputed characteristics. *See* Motion at 8-10; Opp. at 11-12; Reply at 2-4.

"Contrary to [Kroger]'s contention, the word 'preservative' does not appear only to refer to an ingredient that 'actually functions' in a specific product to preserve a given product. Instead, the term 'preservative' appears to have two possible meanings: First, it denotes an ingredient that actually functions to preserve a specific product. Alternatively, and as relevant here, it may denote an ingredient that has the power or the tendency to preserve, regardless of whether it has a preserving function in a specific product." *Kelly v. Beliv LLC*, 640 F. Supp. 3d 286, 296 (S.D.N.Y. 2022) (emphasis in original) (brackets and citations omitted). Because of the double-meaning of "preservative" – referring both to an ingredient with a specific preservative purpose in a food product and to an ingredient that merely has that tendency or effect – the Court does not find that Antossyan necessarily must "show[ at the pleading stage] that the citric acid specifically in the Bars functions as a preservative." Motion at 9; *Kelly*, 640 F. Supp. 3d at 296-97.

Moreover, Antossyan *has* alleged that "[c]itric acid acts a preservative . . . [in] the products at issue," FAC ¶ 12, and neither Rule 12(b)(6) nor Rule 9(b) requires her to plead "testing or scientific literature . . . showing that the citric acid specifically in the Bars functions as a

9

preservative," Motion at 9, which would be "stringent burden on a plaintiff at the pleading stage." *Squeo v. Campbell Soup Co.*, No. 24-cv-02235-SVK, 2024 WL 4557680, at \*4 (N.D. Cal. Oct. 22, 2024) (finding that plaintiff was not required to demonstrate that the "specific citric acid" used in chips was artificial at pleading stage).  Even cases Kroger cites in its favor make clear that a plaintiff "need not submit *evidence* at this stage, like product analysis or testing." *Vineyard v. La Terra Fina USA, LLC*, No. 3:24-cv-00704-NJR, 2025 WL 958319, at \*7 (S.D. Ill. Mar. 31, 2025) (emphasis in original); *Pelayo v. Conagra Brands, Inc.*, No. 23-cv-05833-JD, 2024 WL 3544621, at \*1 (N.D. Cal. May 2, 2024) ("To be sure, plaintiffs are not obligated at the pleading stage to prove their case with evidence in a complaint.").

In fact, many if not most courts have found allegations substantially similar to those in the FAC sufficient to plausibly allege that citric acid is a preservative in food labeling cases concerning representations that a product has "no preservatives."  *See, e.g.*, *Squeo*, 2024 WL 4557680, at \*6 (plaintiffs' allegation that citric acid acted as a preservative based on statements issued by the FDA and USDA allowed court to "reasonably infer" that product "contained a preservative"); *Ward v. Pepperidge Farm, Inc.*, 773 F. Supp. 3d 10, 19 (S.D.N.Y. 2025) (allegation that citric acid functioned as a preservative in product, with citations to "FDA descriptions of citric acid and warning letters," was "sufficient to meet Plaintiff's minimal burden"); *Simeone v. T. Marzetti Co.*, No. 21-cv-9111 (KMK), 2023 WL 2665444, at \*6 (S.D.N.Y. Mar. 28, 2023) ("taken together," allegations that "citric acid can act as a preservative when included in food," a defendant's products "include citric acid," and "that this citric acid serves as a preservative" because of how it functions, "are sufficient to establish that citric acid functions as a preservative" in a product at issue and collecting cases); *Olmos v. T. Marzetti Co.*, No. 21-cv-03159-JAK-(MRWx), 2022 WL 18358950, at \*11 (C.D. Cal. Oct. 11, 2022) (allegations that "citric acid functions as both a preservative and an artificial flavoring agent" but that "the citric acid used in [defendant's products] functions as a preservative," with citations to FDA letters and website, sufficiently stated a claim); *Hayes v. Kraft Heinz Co.*, No. 1:23-cv-16596, 2024 WL 4766319, at \*4 (N.D. Ill. Nov. 13, 2024) (allegation that citric acid functioned as a preservative in products and citations to "scholarly articles describing [its] role in preserving food, as well as FDA guidance that describes citric acid as a preservative . . . are enough to withstand a motion to dismiss").[6]

---

[6] *See also Delvalle v. Coca-Cola Co.*, No. 24-cv-6163 (VEC), 2025 WL 1489257, at \*2 (S.D.N.Y. May 23, 2025) (joining "a slew of other courts" in finding allegation that citric acid is a preservative based on FDA descriptions and

Kroger claims that "cases rejecting allegations indistinguishable from Ms. Antossyan's are legion," but cites for this proposition just one out-of-circuit case specifically involving the sufficiency of allegations that citric acid is a preservative. *See* Motion at 9 (citing *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813 (E.D. Pa. 2017)). This Court generally finds "[t]he *Hu* court's reasoning . . . unpersuasive," as the *Hu* court refused to credit the plaintiff's definition of a preservative, whereas this Court finds that Antossyan's "definition of 'preservative' is supported by the common definition of that term." *Kelly*, 640 F. Supp. 3d at 298 (discussing *Hu*, 251 F. Supp. 3d at 821-22). *Hu* is also distinguishable on its facts. The plaintiff in *Hu* had solely discussed "citric acid's preservative properties" in "unrelated products" ("packaged pineapple, croutons, chicken carcasses, and beef trim") dissimilar in character to the defendant's "dry snack foods," requiring a "chain of speculative assumptions" that was "too attenuated" for that court to find that citric acid functioned as a preservative. *Hu*, 251 F. Supp. 3d at 821-22. Here, Antossyan has explained the preservative role that citric acid plays in fruit sauces and jellies and that the Bars' fruit filling is a jellylike substance that contains citric acid. *See* FAC ¶¶ 11-12. No similarly attenuated chain of assumptions is required.[7] In any event, contrary to Kroger's suggestion, *see* Motion at 10, *Hu* "do[es] not hold that a plaintiff must establish . . . *how* or *whether* an ingredient functions as a preservative to survive a motion to dismiss." *Slowinski v. Drip Drop Hydration, Inc.*, No. 24 CV 5421, 2025 WL 524118, at *4 (N.D. Ill. Feb. 18, 2025) (emphasis in original).

Other cases upon which Kroger relies concern alleged artificiality, not preservatives, and involved a plaintiff who "fail[ed] to draw a nexus" between common industry practice of using artificially-produced citric acids and the defendant's actual practice. *See Tarzian v. Kraft Heinz Foods Co.*, No. 18 C 7148, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 9, 2019); *Valencia v. Snapple Beverage Corp.*, No. 23-CV-1399 (CS), 2024 WL 1158476, at *3 (S.D.N.Y. Mar. 18, 2024); *Pelayo*, 2024 WL 3544621, at *1; *Vineyard*, 2025 WL 958319, at *7.[8] Because there exists an

---

allegation that product contained citric acid sufficiently alleged that citric acid was a preservative in product).

[7] *Zuchowski v. SFC* is similarly distinguishable; there, the plaintiff had plead how the alleged preservatives, none of which were citric acid, functioned as a preservative in (presumably fresh) "breads and baked goods," but not in defendant's "frozen pizzas." *Zuchowski v. SFC Glob. Supply Chain, Inc.*, No. 20-cv-10171 (ALC), 2022 WL 3586716, at *3 (S.D.N.Y. Aug. 22, 2022). The Court also notes that *Zuchowski*, and other alleged preservative cases cited by Kroger that do not involve citric acid, are less persuasive to this Court in light of the highly fact-specific nature of food labeling claims and given the abundance of cases that are specific to citric acid.

[8] *Vineyard* involved an allegation that the citric acid in the product at issue was a preservative, but the court's analysis turned on whether the citric acid was "synthetic or artificial." 2025 WL 958319, at *7. *Figy v. Frito-Lay*

ambiguity as to whether citric acid is a preservative whenever it is present, an allegation that citric acid is a preservative may require fewer factual allegations concerning a defendant's specific practices or an ingredient's makeup and origin than an allegation that a specific ingredient within a product is artificial. *See Quiroz v. Beaverton Foods, Inc.*, No. 17-cv-7348-NGG-(JO), 2019 WL 1473088, at *9 (E.D.N.Y. Mar. 31, 2019) (finding cases "inapposite because they involve[d] products claiming to be 'all natural' rather than those claiming to contain 'no preservatives'").[9]

In any event, "whether citric acid actually functions as a preservative in the [Bars] is a question of fact unsuitable for resolution at the pleading stage." *Squeo*, 2024 WL 4557680, at *6. At this stage, Antossyan has sufficiently pled that it does.

2. Definition of Preservative

Relatedly, Kroger challenges Antossyan's assertion that "reasonable consumers understand based on common parlance that preservatives are ingredients that have the capacity to prevent decay, decomposition, or spoilage," *see* FAC ¶ 20, as overly broad. *See* Motion at 11-13. Kroger argues that this would extend almost any to food with salt, sugar, or spices, in defiance of common sense. *Id*. at 12. Moreover, Kroger argues that both the FDA and Merriam-Webster definitions of "preservative" to which Antossyan cites are narrower and only "focus on the actual *use* of an ingredient – not its hypothetical capacity." *Id*. Antossyan argues that her definition is reasonable because consumers seek to avoid the "negative potential effects of consuming preservatives," which may occur independent of its other functions or intended purpose in a food product, and argues that a preservative is defined not by its intended function but its likelihood that it will display preservative effects. *See* Opp. at 9-10.

The Court does not share Kroger's concern that Antossyan's definition of "preservative" would extend to any food product flavored with salt. While FAC ¶ 20 is phrased somewhat broadly, the Court does not read it in isolation: the FAC also relies upon the FDA definition of preservative, which specifically excludes "'common salt, sugars, vinegars, [and] spices.'" *See*

---

also concerned allegedly artificial ingredients, none of which were citric acid, and did not contain any industry practice allegations, only an assertion that the ingredients were unnatural. *See Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1089-90 (N.D. Cal. 2014).

[9] The Court finds cases pertaining to whether an ingredient was an artificial or natural "flavor" similarly factually distinguishable. *See Svensrud v. Frito-Lay N. Am., Inc.*, No. 20-cv-00714-JLS-(DFMx), 2020 WL 8575056, at *4 (C.D. Cal. Dec. 21, 2020); *Trammell v. KLN Enters., Inc.*, No. 23-cv-01884-H-JLB, 2024 WL 1722243, at *4 (S.D. Cal. Apr. 22, 2024).

FAC ¶ 13 (quoting 21 C.F.R. § 101.22).  Furthermore, while there are nuances between the FDA and the Merriam-Webster definitions, the Court does not find them to be necessarily mutually exclusive as they pertain to Antossyan's allegations concerning citric acid.  *See Kelly*, 640 F. Supp. 3d at 296-97 (discussing Merriam-Webster, Oxford English Dictionary, and FDA definitions of "preservative").  Nor does the Court find that the definitions necessarily "focus on the actual *use* of an ingredient" as Kroger contends.  *See* Motion at 12.  As the Court has discussed *supra*, a preservative "may denote an ingredient that has the power or the tendency to preserve, regardless of whether it has a preserving function in a specific product."  *Kelly*, 640 F. Supp. 3d at 296.  Therefore, "[i]n accordance with [the Merriam-Webster, Oxford English Dictionary, and FDA] definitions of 'preservative,' it is plausible that a reasonable consumer would understand a product label that says 'No Preservatives' to mean that the product did not contain any ingredients that would tend to prevent or retard deterioration regardless whether that was their primary or intended function with respect to the [Bars]."  *Id.* at 296-97.

Moreover, as the Court discussed in the prior subsection, Antossyan has specifically alleged that the citric acid functions as a preservative in the Bars, and the Court has found such allegations sufficient at this stage.  Therefore, Antossyan has plausibly stated a claim that the Bars contain a preservative even under the narrower definition of "preservative" that Kroger posits.

3. Plausibility

Next, Kroger argues that it is "implausible that reasonable consumers would jump to the conclusion that 'no preservatives' means no citric acid" because citric acid has non-preservative functions and a reasonable consumer would "'require more information'" before concluding a food product labeled as preservative-free has no citric acid.  *See* Motion at 13 (quoting *Trader Joe's*, 4 F.4th at 882).  Antossyan asserts that this argument ignores the broader definition of "preservative" she has proposed and her allegation that the citric acid does function as a preservative in the Bars, as well as depends upon a factual conclusion inappropriate at this stage.  *See* Opp. at 13.

Kroger's plausibility argument is another shade of its definitional argument, as it turns on the assumption that reasonable consumers would not view an ingredient with merely a preservative tendency to be a preservative because it may have other functions.  The Court has already indicated that it will not make such an assumption at this stage of litigation.

Additionally, *Trader Joe's* offers Kroger no support.  The Ninth Circuit found in *Trader Joe's* that "reasonable consumers would necessarily require more information before they could

13

reasonably conclude Trader Joe's label promised a honey that was 100% derived from a single, floral source." 4 F.4th at 882. This was because a reasonable consumer would make "three key contextual inferences from the product itself." *Id.* at 883. First, "a reasonable honey consumer would know that it is impossible to produce honey that is derived exclusively from a single floral source," because "it is impossible to exercise complete control over where bees forage down to each specific flower or plant." *Id.* Second, consumers of the "niche, specialty product" at issue, Manuka honey, were "undoubtedly more likely to exhibit a higher standard of care" and "know more than most about the production of the product." *Id.* at 884. Finally, the "inexpensive cost" of the product "would signal to a reasonable consumer" that it contained a low concentration of Manuka flower nectar, because such a consumer would be aware that higher concentrations of Manuka nectar correspond to higher prices and vice versa. *Id.* In short, *Trader Joe's* counsels that context is important to false labeling cases, and the context of *Trader Joe's* is entirely different, involving a different type of representation, product, and consumer. The fact that citric acid has non-preservative purposes does not establish that a reasonable consumer would require additional information before understanding a "no preservatives" label to indicate an absence of citric acid.

4. Back Label Ingredient List

Kroger further argues that "a reasonable consumer would look at the back label" and see the presence of citric acid, therefore dispelling any confusion consumers may have predicated on the ambiguity created by the "no preservatives" label. *See* Motion at 14-16; Leigh Decl., Ex. A. Antossyan contends that the small-print ingredient disclosure does not remedy the misleading representation on the front label. *See* Opp. at 14-15.

Reasonable consumers are not "expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Williams*, 552 F.3d at 939 ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception."). However, where "a front label is ambiguous, the ambiguity can be resolved by reference to the back label." *McGinity*, 69 F.4th at 1099. The determination of whether a reasonable consumer would look to the back label of a product thus turns on whether there is a representation on the front label that could deceive or mislead consumers under *Williams* or if the front label is merely "ambiguous" under *McGinity*.

The Court has found some ambiguity as to the definition of preservative. However, the

14

ambiguity relevant to *McGinity* is whether the representation at issue makes a promise. *Id.* at 1098; *see also Whiteside*, 108 F.4th at 780-81 (clarifying that a label is ambiguous under *McGinity* when "a reasonable consumer would necessarily have required more information before concluding that the products' front labels were making a specific promise," rather than when a label is merely "susceptible to two possible meanings"). In *McGinity*, the term "Nature Fusion" on a product label "d[id] not make any affirmative promise about what proportion of the ingredients are natural." 69 F.4th at 1098. Therefore, a reasonable consumer could not formulate certain expectations about the proportion of natural to synthetic ingredients in the product without reference to the ingredient list. *See Whiteside*, 108 F.4th at 780 ("the front label in *McGinity* . . . was so devoid of any concrete meaning that there was nothing 'from which any inference could be drawn or on which any reasonable belief could be based about' the shampoo's ingredients" (quoting *Ebner*, 838 F.3d at 966)).[10] By contrast, a "No preservatives" label makes an affirmative promise that the product contains no preservatives. Regardless of the two possible meanings of preservative, if citric acid *is* a preservative, then the label is "unambiguously deceptive." *McGinity*, 69 F.4th at 1098. Put differently, a reasonable consumer would not require further information before concluding that the Bars' front label has promised a preservative-free product. *Whiteside*, 108 F.4th at 780-81.

Therefore, *Williams* rather than *McGinity* applies, and the disclosure of citric acid in the ingredient list on the back label does not necessarily preclude a reasonable consumer from concluding that the Bars would not contain citric acid in reliance on the "No preservatives" label.

The Court therefore **DENIES** the Motion insofar as it seeks dismissal of Antossyan's claims for failure to state a legally sufficient claim under the reasonable consumer test.

**D. Reliance**

Kroger next argues that Antossyan has failed to plead actual reliance upon the Bars' labeling because she failed to plead "that she actually read the label," that she did so "before her purchase," and what she "thought 'no preservatives' meant about the Bars and how this influenced her purchase." *See* Motion at 16-17. While Kroger concedes that Antossyan indicated that she "made her purchasing decision because of the labeling," *see* FAC ¶ 18, Kroger contends that this assertion is too vague and conclusory to support actual reliance. Motion at 16-18. Antossyan agrees that her claims require her to plead actual reliance, but contends her allegations meet the

---

[10] *Cheslow v. Ghirardelli* similarly involved "no affirmative statement of misrepresentation on the product label." *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 20 (N.D. Cal. 2020).

requisite standard under California law. *See* Opp. at 16-17.

"The test for reliance in cases premised on false advertising and misrepresentations to consumers" under California law requires a plaintiff to "'show that the misrepresentation was an immediate cause of the injury-producing conduct,'" but not to "'to allege that the challenged misrepresentations were the sole or even the decisive cause of the injury-producing conduct.'" *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020) (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 327 (2011)). A plaintiff meets her burden by alleging that "'she would not have bought the product but for the misrepresentation.'" *Id.* (quoting *Kwikset*, 51 Cal. 4th at 330). The allegation that "'as a result of [a misrepresentation], [a] Plaintiff paid more for [product] than [she] would have paid in the absence of the [misrepresentation], or would never have purchased [product]' . . . is sufficient under *Kwikset* to survive a motion to dismiss." *Id.* (brackets omitted). Antossyan has made such an allegation here. *See* FAC ¶ 22.

Moreover, reliance may "inferred from the misrepresentation of a material fact," and "[w]hether a misrepresentation is sufficiently material to allow for an inference of reliance is generally a question of fact that cannot be decided at the motion to dismiss stage." *Mars Petcare*, 966 F.3d at 1021 (internal quotation marks omitted).

The Court therefore finds Antossyan's allegations concerning her reliance upon the alleged "No preservatives" misrepresentation sufficient at this juncture. While Kroger quibbles that Antossyan did not explicitly state that she read or saw the product labeling, the Court cannot fathom how else Antossyan could have specifically "made her purchasing decision because of the labeling on the Product that read 'no preservatives.'"[11] FAC ¶ 18. Likewise, the Court does not find that Antossyan has "fail[ed] to allege [a] temporal relationship between reliance and a purchase," *see* Motion at 17, when she has clearly indicated that her purchasing decision in reliance on the label occurred "[w]hen purchasing the Products," which was "[o]n or about February 4, 2025." FAC ¶¶ 17-18. The Court therefore **DENIES** the Motion insofar as it seeks dismissal of

---

[11] By contrast, the cases Kroger cites involved distinct factual contexts with far more ambiguous circumstances of the plaintiffs' purchase(s) as to whether they would have read, seen, or relied upon the representations at issue. *See Kearns*, 567 F.3d at 1126 (plaintiff failed to allege what "television advertisements or other sales material" he had relied upon in vehicle purchase or even what they had "specifically stated"); *Green v. Canidae Corp.*, No. 09-cv-00486-GAF-(PLAx), 2010 WL 11507372, at *6 (C.D. Cal. Jan. 29, 2010) (plaintiffs alleged that they had read labeling of previous iteration of product they had purchased, but not "reformulated" product packaging at issue); *Rothman v. Equinox Holdings, Inc.*, No. 22-cv-09760-CAS-(MRWx), 2021 WL 124682, at *5 (C.D. Cal. Jan. 13, 2021) (plaintiff failed to plead any exposure to, much less reliance upon, gym's refund policy before purchase of gym membership).

Antossyan's claims for failure to plead actual reliance.

### E.  Class Allegations

Next, Kroger contends that Antossyan's class allegations should be dismissed under Rule 12(b)(6) or stricken under Federal Rule of Civil Procedure 12(f) because she seeks to represent a nationwide class but has only asserted claims under California law, which Kroger asserts raises issues both because of the presumption that California law does not apply extraterritorially and applicable choice-of-law rules.  *See* Motion at 18-20.  Antossyan contends that dismissal of the class allegations would be premature on this undeveloped factual record.  *See* Opp. at 18-20.

While "class allegations may be stricken at the pleading stage, the granting of motions to dismiss class allegations before discovery has commenced is rare."  *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007).  "Generally . . . most courts decline to grant such motions because the shape and form of a class action evolves only through the process of discovery."  *Fernandez v. CoreLogic Credco, LLC.*, 593 F. Supp. 3d 974, 995 (S.D. Cal. 2022) (brackets and internal quotation marks omitted); *see also Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) (finding that while "[d]istrict courts have broad discretion to control the class certification process," even prior to discovery, "the better and more advisable practice . . . is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable." (internal quotation marks omitted)).  "However, district courts do dismiss class allegations on a 12(b)(6) motion, applying the *Twombly/Iqbal* standard, where the complaint lacks any factual allegations and reasonable inferences that establish the plausibility of class allegations."  *Franklin v. Home Depot U.S.A., Inc.*, No. 25-cv-03657-BLF, 2025 WL 2689855, at *2 (N.D. Cal. Sept. 18, 2025) (internal quotation marks omitted); *see, e.g., Swearingen v. Late July Snacks LLC*, No. 13-cv-04324-EMC, 2017 WL 1806483, at *9 (N.D. Cal. May 5, 2017) (dismissing nationwide class allegations where plaintiffs made "no allegations supporting a nexus between California law and any out of state purchases, and in light of the presumption against extraterritorial application of the California [consumer protection] laws at issue").

Kroger argues that the FAC fails to defeat the presumption against extraterritorial application of California law to members of the prospective nationwide class domiciled outside of California.  "On the issue of extraterritoriality, California law presumes that the legislature 'did not intend the statutes of this state to have force or operation beyond the boundaries of the state.'"  *Regueiro v. FCA US, LLC*, 671 F. Supp. 3d 1085, 1102 (C.D. Cal. 2023) (quoting *Nw. Mortg., Inc.*

*v. Superior Ct.*, 72 Cal. App. 4th 214, 222 (1999)). "Unless the legislature explicitly indicates otherwise, if the liability-creating conduct occurs outside of California, California law generally should not govern that conduct." *Id.* (internal quotation marks omitted). "This includes claims under the UCL and CLRA." *Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035, 1047 (C.D. Cal. 2019). "[E]xtraterritorial application of the UCL is improper where non-residents of California raise claims based on conduct that allegedly occurred outside of the state," but "is not barred where the alleged wrongful conduct occurred in California." *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 598 (C.D. Cal. 2008).

Antossyan admits that Kroger is an Ohio corporation headquartered in Cincinnati. *See* FAC ¶ 7. Although she has plead that Kroger "manufactures, advertises, markets, sells, and distributes products throughout California and the United States," *id.* ¶ 9, the "FAC does not provide factual allegations demonstrating that [Kroger]'s California-based conduct has any nexus to [an] out-of-state [prospective class member] plaintiff's alleged injuries." *Regueiro*, 671 F. Supp. 3d at 1103; *see also Swearingen*, 2017 WL 1806483, at *9.[12] The Court therefore agrees with Kroger that Antossyan has not met her burden to plead facts overcoming the presumption against extraterritorial application of California law nationwide.[13]

The Court therefore **GRANTS** the Motion insofar as it seeks to dismiss Antossyan's claims

---

[12] *See also Campbell v. Honey Sci., LLC*, No. 25-cv-02850-PCP, 2025 WL 2491002, at *9 (N.D. Cal. Aug. 28, 2025) (dismissing UCL claim where plaintiff made "no allegation that the harmful conduct at issue occurred in or emanated from California"); *cf. Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1132 (N.D. Cal. 2014) (plaintiff "alleged a sufficient nexus between California and the misrepresentations" underpinning UCL and CLRA claims where she alleged that "the misrepresentations were developed in California, contained on websites and an application . . . maintained in California, and that billing and payment of services went through [California] servers").

[13] However, the Court would find dismissing or striking the nationwide class allegations based on the choice-of-law arguments Kroger has raised to be premature at this stage. "[A] detailed choice-of-law analysis is not appropriate at [the pleading] stage of the litigation. Rather, such a fact-heavy inquiry should occur during the class certification stage, after discovery." *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013); *see also Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012); *Gitson v. Trader Joe's Co.*, 63 F. Supp. 3d 1114, 1116 (N.D. Cal. 2014). Moreover, Kroger has not specifically explained that the law of any other state materially differs from California consumer protection law, only cites a case observing that courts in this circuit have "held that California's consumer protection statutes are materially different from those in other states." *Davison v. Kia Motors Am., Inc.*, No. 15-cv-00239-CJC, 2015 WL 3970502, at *2 (C.D. Cal. June 29, 2015). The Court respectfully disagrees with the approach taken in *Davison*. Where a plaintiff "is not constitutionally precluded from availing himself of California's consumer protection laws, [because] choice-of-law analyses [are] a case-and fact-specific inquiry, [d]efendants cannot meet their burden merely by citing cases in which other defendants have met this burden in factually different circumstances. Defendants can only meet this burden by engaging in an analytically rigorous discussion of each prong of California's 'governmental interests' test based on the facts and circumstances of *this* case, and *this* [p]laintiff's allegations." *Forcellati*, 876 F. Supp. 2d at 1161 (emphasis in original).

18

on behalf of a nationwide class with leave to amend in accordance with the foregoing analysis.[14]

### F. Punitive Damages

Finally, Kroger submits that Antossyan's claim for punitive damages should be dismissed under Rule 12(b)(6) or stricken under Rule 12(f) because she has failed to plead malice, fraud, or oppression, either on behalf of Kroger or any of its officers or agents.[15]  *See* Motion at 22. Antossyan asserts that her allegations that "citric acid is a well-known preservative" and that Kroger intentionally mislabeled the Bars as preservative-free create a sufficiently reasonable inference of fraudulent conduct.  *See* Opp. at 25.

"Under [Rule] 9(b), malice, intent, knowledge, and other conditions of the mind may be alleged generally."  *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 273 (N.D. Cal. 2015) (internal quotation marks omitted).  "In the Ninth Circuit, plaintiffs need not plead any particularity in connection with an averment of intent, knowledge or condition of the mind."  *Id.* (internal quotation marks omitted). "[A] plaintiff may include a short and plain prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent." *Alejandro v. ST Micro Elecs., Inc*, 129 F. Supp. 3d 898, 917 (N.D. Cal. 2015) (internal quotation marks omitted).  Therefore, a complaint "satisfies the federal pleading standard by reciting 'a short and plain prayer for punitive damages' that satisfies each of the substantive requirements of Cal. Civ. Code § 3294."[16]  *Id.* at 918; *Grausz v. Kroger Co.*, No. 19-cv-449 TWR (AGS), 2021 WL 5534706, at *9 (S.D. Cal. Jan. 22, 2021) (allegations of intentional placement of alleged misrepresentations on product label with intent to induce purchase, and that senior officers allowed

---

[14] Accordingly, the Motion to strike the nationwide class allegations is **DENIED AS MOOT**.

[15] The paragraph in which Kroger addresses punitive damages also contains one sentence asserting that "*actual and* punitive damages should be dismissed (or struck)."  *See* Motion at 22 (emphasis added).  Because Kroger offered no analysis as to why Antossyan's claim for actual damages should be dismissed or struck, the Court finds no basis to dismiss or strike the claim for actual damages.

[16] Under California law, a plaintiff may recover punitive damages when "the defendant has been guilty of oppression, fraud, or malice."  Cal. Civ. Code § 3294(a).  Malice is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others."  Cal. Civ. Code § 3294(c)(1).  Oppression means "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights."  Cal. Civ. Code § 3294(c)(2).  Fraud is defined as "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."  Cal. Civ. Code § 3294(c)(3).  "For a corporate employer to be liable for punitive damages, an officer, director, or managing agent of the corporation must have had advance knowledge of, must have conscious disregard toward, or must have authorized, the malicious, oppressive, or fraudulent acts."  *See* Cal. Civ. Code § 3294(b).

the product to be sold with knowledge or reckless disregard that claims were fraudulent, were sufficient). However, courts take different approaches "regarding the sufficiency of pleadings in federal court for punitive damages." *Rees*, 308 F.R.D. at 274. "Some courts have required plaintiffs to plead authorization or ratification of allegedly wrongful acts by officers, directors, or managing agents of a corporation to survive motions to strike punitive damages," while "[o]thers have assumed authorization." *Id*. (collecting cases).

Kroger cites just one case to assert that Antossyan "must plead more than non-conclusory allegations" to seek punitive damages. *See Rozier v. Dep't of Homeland Sec. Fed. Protective Serv.*, No. 2:21-cv-07232-SB-(AFMx), 2022 WL 2199938, at *3 (C.D. Cal. Mar. 7, 2022). The Court respectfully disagrees with *Rozier* insofar as it requires a plaintiff to plead more specificity than the allegations found sufficient in *Alejandro* and *Grausz*, both of which involved conclusory allegations as to fraudulent intent consistent with Ninth Circuit precedent. *See Alejandro*, 129 F. Supp. 3d at 918; *Grausz*, 2021 WL 5534706, at *9.

However, "a plaintiff [seeking punitive damages] must plead the corporation's advance notification or ratification of the conduct made on the part of an officer, director, or managing agent of the corporation . . . because a company simply cannot commit willful and malicious conduct – only an individual can." *Rothman v. Equinox Holdings, Inc.*, No. 2:20-cv-09760-CAS-(MRWx), 2021 WL 1627490, at *12 (C.D. Cal. Apr. 27, 2021) (internal quotation marks omitted); *see* Cal. Civ. Code § 3294(b). Antossyan has "not plead sufficient facts to support an award of punitive damages because [she] does not allege that any individual committed willful and malicious conduct or identify any officer, director or managing agent who was on advance notice or ratified such conduct." *Rothman*, 2021 WL 1627490, at *12 (internal quotation marks omitted); *cf. Alejandro*, 129 F. Supp. 3d at 918 (alleged acts were "carried out, authorized and ratified by officers and managing agents acting within the course and scope of their employment with Defendant"); *Grausz*, 2021 WL 5534706, at *9 (defendant's "senior officers and directors allowed the Product to be sold with full knowledge or reckless disregard that the challenged claims are fraudulent, unlawful, and misleading").

The Court therefore **GRANTS** the Motion insofar as it seeks to dismiss Antossyan's requested relief of punitive damages with leave to amend.[17]

---

[17] Accordingly, the Motion to strike the claim for punitive damages is **DENIED AS MOOT**.

**IV.**     <u>**Conclusion**</u>

Based on the foregoing discussion, the Court would **GRANT** the Motion with respect to dismissal of the nationwide class allegations and request for punitive damages (both with leave to amend), and **DENY** the Motion with respect to dismissal of Antossyan's claims for lack of standing and failure to state a claim under the UCL, FAL, and CLRA.